Millard L. Midonick, J.
This is a motion pursuant to CPLR 3213 for summary judgment in an accounting proceeding. Objectants move for summary judgment on five issues: (1) apportioning Federal and State estate taxes among all beneficiaries ; (2) disallowing payments to the accountant for accounting services; (3) disallowing commissions to the executors; (4) disallowing fees to the attorney; (5) apportioning administration expenses and debts among the beneficiaries.
*663 Petitioner opposes objectant’s motion for summary judgment and cross-moves to dismiss the objections. The court grants objectant’s motion on the first count but denies his motion as to counts two, three, four and five and dismisses them accordingly.
All parties agree that no hearing is required in this case and that the issues may be determined by a reading of the will, affidavits, and other papers submitted.
The first objection presents a question as to apportioning of taxes. The pertinent part of the will is as follows: ‘1 Article Fourteenth: I direct that all estate, transfer, inheritance, succession and similar taxes imposed by the Federal, State and other governmental authority, domestic or foreign, with respect to property passing both under this my will, and outside my will, and required to be included in my gross, taxable estate, regardless of its location at the time of my death, shall be exacted from the respective recipients of such property in acóordance with the pertinent laws of New York in force and effect at the time of my death governing the apportionment of taxes; provided, however, that no such taxes shall be exacted frqm my sons Benjamin Kramer and Irving Kramer and my daughter Anna L. Heit and the trustees of the trust set up for my daughter hereunder, with respect to any property passing to them, it being my intention and so direct, that all property passing to them shall be free of tax apportionment.” The applicable statute is EPTL 2-1.8.
At first it appears that the testator desired the statute to be followed, but the second part of the article makes clear his intention to have preferred legacies to his children, free of burden of estate taxes. The problem arises here because there were not sufficient funds in the estate to pay the taxes without resorting to that which testator left to his children.
In article Second of the will testator gave $3,500 for perpetual care of plots in two cemeteries. In article Third of the will he gave a specific legacy of stock óf a corporation operating a farm in the State of Connecticut and all of the furniture, equipment and livestock on that farm, which the decedent individually owned, to his son Irving Kramer. This was appraised at $484,600. In article Fourth he gave a trust of $5,000 to his sister-in-law. In article Fifth the testator gave a trust of $5,000 for his niece. Article Sixth provided for several small bequests totaling $6,000. In article Seventh testator bequeathed $4,700 to charities. Article Eighth is the residuary clause in which testator gave his son Irving one third of the residue less $10,000; to son Benjamin one third of the residue plus $5,000; *664 and his daughter in trust one third of the residue plus $5,000. Article Ninth reveals some doubt in testator’s mind concerning the1 liquidity of his estate, for he authorized his executors to delay payment of legacies until they could be paid without unduly sacrificing asset values. He directed that no interest on legacies be paid until 36 months after his death, and thereafter interest only at 2%.
Article Tenth reads: “ It is my intention and I hereby direct that the provision for perpetual care provided for in Article Second be carried out in full, that the legacies provided for in Article Third be paid or satisfied in full and that my residuary estate, as referred to in Article Eighth shall be of a minimum value of Three Hundred and Seventy Five Thousand ($375,000.00) Dollars. All other legacies herein provided for shall be paid only out of such part of my estate if any, as shall remain after the payment of taxes, administration expenses and debts, and the payment or satisfaction in full of the provisions of, and, legacies provided for in Articles Second and Third and the setting aside of assets of the minimum value of Three Hundred and Seventy-Five Thousand ($375,000.00) Dollars for the legacies and trust provided for in Article Eighth. Accordingly, if after the payment of taxes, administration expenses and debts, and the payment or satisfaction in full of the provisions of, and legacies provided for in Articles Second and Third and the setting aside of assets of the minimum value of Three Hundred and Seventy-Five Thousand ($375,000.00) Dollars for the legacies and trust provided for in Article Eighth, there do not remain sufficient assets to pay all other legacies in full, then I direct that such other legacies shall be paid in the following order, so far as the assets applicable for the payment thereof will extend:
“ a. The trust provided for in Article Fourth shall be first set up and paid;
1 ‘ b. The legacies provided for in Article Sixth and the trust provided for in Article Fifth shall secondly be paid and set up;
“ c. The legacies provided for in Article Seventh shall lastly be paid.”
The Federal and .State estate taxe.s exceed $200,000. The gross estate received by the executors, including realized increases over inventory value, amounts to $781,319.90 of which $484,600 represents the shares of stock of the farm corporation and $3,022 the furnishings and effects at the farm. It is thus clear at a. glance that, without even considering debts and administra *665 tion expenses, the specified general legacies have been wiped out, the residue is still less than $375,000 and that the executors necessarily had to resort to the children’s legacies to pay the taxes. In doing so, however, the executors did not apportion estate taxes against Irving’s specific legacy, and the objectants seek to require them to do so.
It is true that the testator intended that Irving was to have the specific legacy without any burden of estate taxes, but it is equally true that all three children were intended to take their legacies free of any tax burden. The same sentence in the will covered all of them, and expressed no preference for any one above the other two. All were favored, and all were treated alike. The expectations of the testator and his particular hopes and plans may be somewhat obscure. Reading the will in its entirety, this appears to be the plan as expressed in the will: The sum of $375,000 is first to be set aside from the net estate for legacies to the three children. The specific legacy of the farm is to be distributed. Debts and administration expenses would be paid out of the balance of the residuary estate after setting aside the $375,000. The general legacies would then be satisfied, but each would be diminished by its pro rata share of the estate taxes. How the testator thought the balance of estate taxes would be paid, if indeed that point engaged the testator’s thought, is not provided explicitly in the will, but that point is only of academic interest now because of the actual estate financial situation. The general legacies have completely abated; there remains only the specific legacy of the farm corporation and what now must really be deemed a general legacy to the children of less than the specified $375,000.
It is a well-established principle that when the fund indicated in the will as the source of all tax payments, is either nonexistent or insufficient to pay estate taxes in full, the statutory rule (EPTL 2-1.8, formerly Decedent Estate Law, § 124) then becomes operative. Under that rule all persons benefited contribute to the tax in proportion to their respective benefits. (Matter of Halsted, 174 Misc. 292, affd. 261 App. Div. 892; Matter of Caswell, 239 App. Div. 695; Matter of Goldman, 4 Misc 2d 31; Matter of Zimtbaum, 206 Misc. 432; Matter of Andrade, 177 Misc. 532; Matter of Martin, 176 Misc. 805; Matter of King, 6 Misc 2d 922; Matter of Volckening, 70 Misc 2d 129.) A testator may, of course, make provision for such a contingency and his directions will be effectuated insofar as possible. However, this testator has not, either explicitly or implicitly, revealed any *666 token of intention other than to free all children from the tax burden. The general principle is, therefore, applicable here.
The court accordingly grants objectants ’ motion on the first issue and directs an equitable allocation of estate taxes against the legacies of all the children.
The second objection deals with accounting fees. The accountant submitted an affidavit valuing his services at $5,712. The bulk of his work dealt with preparation of various tax returns and examinations of these returns. He is entitled to reasonable compensation for such services. (Matter of Chamberlain, N. Y. L. J., Feb. 16, 1971, p. 17, col. 8 ; Matter of Jadwin, 58 Misc 2d 809; Matter of Edelmuth, 73 N. Y. S. 2d 886, 889.) On the basis of the services rendered, the time spent and the necessity of the services, the court finds that the sum requested is reasonable and therefore denies objectant’s motion on the second count.
The third objection deals with commissions to the executors. It is the objectant’s contention that the executors should not be compensated because they did not apportion the taxes properly. An executor may be denied commissions for misconduct, breach of trust or mismanagement of the estate. (Matter of Bloomingdale, 172 Misc. 218, 229 et seq.) In the absence of bad faith, neglect of duty or wanton disregard of the rights of persons interested in the estate, commissions should not be denied an executor. (Matter of Dutcher, 102 App. Div. 410, 412; Matter of Hildreth, 274 App. Div. 611, 615, affd. 301 N. Y. 705; Matter of Taft, 145 Misc. 435, 437 et seq. and cases cited.) An executor is not ‘ ‘ expected to be infallible in. his judgment or decisions. Like all mortals, he is liable to make mistakes.” (Matter of Baker, 249 App. Div. 265, 267.) Even if a fiduciary acted erroneously, if there is no evidence ojLbad faith, he should not be denied his commission. (Matter of Buck, 184 Misc. 29, 40; Matter of Lukin, 26 Misc 2d 176, 178.)
A mere mistake of law in the apportionment of taxes is not malfeasance or misconduct so as to warrant a denial of a commission. In this case a construction of the will was required. The will is not that clear and unambiguous so as to make only one course of action available to the executors. Therefore, the court will not deny the executors their commissions and denies objectant’s motion on the third issue. The cross motion to dismiss this objection is granted.
The fourth objection is dismissed. The court finds the attorney’s fee in the sum of $20,000 to be reasonable. The court has carefully considered the time spent, the size of the estate, *667 the complexity of the issues and the services rendered, and has determined the fee on the basis of all of these factors.
The fifth objection deals with apportioning administration expenses and debts among the beneficiaries. The executors apportioned them to the residuary estate but did not apportion them against the specific legacy of the Blueberry Hill stock. Article Eighth of this will is different from the usual residuary clause in that in one aspect it may be said to provide a general legacy of $375,000, and in another aspect it disposes of the entire residue. Whether we regard it as a general legacy or a residuary disposition is not significant in respect of the present issue. EPTL 13-1.3 says that in applying estate property to the payment of administration expenses, reasonable funeral expenses and debts, “interests in the decedent’s estate abate, for the purpose of paying such estate obligations, in the following order: (1) * * * (2) Residuary dispositions. (3) General dispositions. * * * (4) Specific dispositions.” This order of abatement is, of course, subordinate to the principle that whenever such abatement is “ inconsistent with the express or implied intention of the testator * # to prefer certain beneficiaries under his will to others, the property of the estate shall be applied and the interests of beneficiaries under the will shall abate in such manner as is necessary to give effect to the intention of the testator.” (EPTL 13-1.3, subd. [d].)
Therefore, whether we treat article Eighth as a residuary disposition or a general legacy, it must abate before resort can be had to property specifically bequeathed. There can be no doubt that the disposition in article Third is specific. There is nothing in the will to indicate an intention on the part of the decedent that is inconsistent with the statutory mandate. He did state explicitly that the perpetual care provided in article Second was to be paid in full and that the legacies in article Third were to “be paid or satisfied in full ’ ’ and that the article Eighth bequests were to have priority over all other legacies to the extent of $375,000. He evidently assumed that he would leave sufficient property to permit satisfaction of the legacies to all his children, and he apparently hoped that there would be enough left over to pay some or all of the other legacies. It is probable, therefore, that he took no thought of the possibility that there would be insufficient funds to permit the specified payment to the residuary legatees. In any event he said nothing at all with respect to preference between the specific legacy and the residuary legatees and he revealed no intention or purpose *668 respecting them. Lacking any token of a different intention, we must follow the statute. The residue must be first used and the specific legacy only if the residue is exhausted.
The motion of objectants for summary judgment is denied. The objection is dismissed.
Submit order on notice accordingly.