OPINION OF THE COURT
Fuchsberg, J.
In this will construction proceeding, the essential issue is whether a provision of decedent Charlotte L. Cord’s irrevocable inter vivos trust, which directed that the trust *542 assume payment of any estate taxes assessed because of its existence, was superseded, without more, by a provision of her will, executed some 40 years later, and directing, in turn, that all death taxes of any nature be paid out of her general estate as an expense of its administration. A subsidiary question is whether the obligation imposed by the trust indenture could be changed other than in the manner expressly provided by EPTL 7-1.9, under which formal consent of all parties “beneficially interested” in a trust is a prerequisite to its revocation or amendment.[1]
The trust provision, in its article third, states: “The Trustees are hereby directed and empowered to pay to the executor or the administrator of the Grantor’s estate any estate taxes which may be assessed against such executor or administrator because of the existence at the time of the Grantor’s death of the trusts hereby established.”
The clause of the will, in its article 2, states: “I direct that all estate, inheritance, transfer, legacy, succession and other death taxes of any nature payable by reason of my death and imposed upon or with respect to property passing under this Will, or property not passing under this Will, including interest or penalties, if any, shall be paid out of my general estate as an expense of administration, without allocation or proration to any legatee or devisee under this Will or any person owning or receiving property not passing under this Will.”
Petitioner, who is decedent’s surviving husband and executor, commenced this proceeding in Surrogate’s Court, Suffolk County, after rejection of his demand that an allocable portion of the estate taxes be paid from the ultimate corpus of the trust, whose beneficiaries are decedent’s children by a prior marriage. After exchanging pleadings, the parties consented that an evidentiary hearing be waived. Substantively, the result of the submission *543 was to rest the determination of the Surrogate on the will, the trust indenture and, subject to the issue of its admissibility, a stipulation that, had the draftsman of the will been called as a witness, he simply would have testified that he was unaware of the existence of the trust at the time he drew the will and, perforce, “did not in any manner whatever have in mind” the effect of one instrument on the other.[2]
In deciding the issue so raised, the Surrogate was persuaded by the fact that the will did not “specifically relieve the inter vivos trust from its mandated obligation”. To bolster this holding, he further reasoned, in the alternative, that, even if article 2 of the will, though lacking express and explicit direction for apportionment, should be construed to so intend by implication, nonapportionment was still required because the will, however appropriate as a testamentary document, did not comly with EPTL 7-1.9. As to the stipulation, after ruling it admissible, the court nevertheless found it without “probative value”. Accordingly, it decreed that the trust pay its proportionate share of the death taxes.
But, for its part, on review, the Appellate Division reversed, on the law. Emphasizing the breadth of the language of article 2 of the will, it construed it to impose the “unqualified obligation” (89 AD2d, p 909) that death taxes on all property passing by reason of the decedent’s death be paid by her estate. It specifically held that the draftsman’s unawareness of the trust provision did not vitiate this interpretation. And, in taking these stances, it did not discuss the posture of EPTL 7-1.9.
Petitioner now appeals as of right (CPLR 5601, subd [a], par [ii]). In his quest for reinstatement of the Surrogate’s decree, he relies on the rationale of nisi prius, including its reliance on EPTL 7-1.9, as well as the stipulation to which *544 that court gave no weight. For the reasons which follow, we uphold the result reached at the Appellate Division.
Our analysis may well begin with the obvious, i.e., that, in a will construction proceeding, the search is for the decedent’s intent (Matter of Thall, 18 NY2d 186, 192-193; Matter of Fabbri, 2 NY2d 236, 239-240) and not for that of the draftsman (e.g., Matter of Aldrich, 259 App Div 162, 164; Matter of Kindermann, 48 Misc 2d 607, 610, affd 27 AD2d 856, revd on other grounds 21 NY2d 790; Matter of von Echt, 39 Misc 2d 373, 376 [all involving tax apportionment clauses]). For, put in the phrase employed in the stipulation in the present case, relevant in the end was not what her scrivener, but what the testatrix had “in mind”. This is especially true here, where it is agreed that the two never as much as discussed the inter vivos trust. Absent other proof which might lend significance to this silence, it therefore plays no role in this proceeding.
Indeed, since ascertainment and implementation of testamentary intent is, consistent with applicable law, to be gleaned, if possible, from within the four corners of the will itself (Matter of Jones, 38 NY2d 189, 193), as a rule extrinsic evidence will not be admissible to vary or contradict the unambiguous expression of the decedent (Matter of Ragone, 58 NY2d 864, revg 87 AD2d 457, for reasons stated by Surrogate Midonick at 116 Misc 2d 993, 997; Matter of Villalonga, 6 NY2d 477, 482). In this perspective, contrary to the premise espoused by the petitioner and adopted by the Surrogate, the failure to mention the trust in article 2 of the will is of no moment. Its all-encompassing direction is plain in its prescription that death taxes payable by the estate not only expressly include those payable on “property not passing under this Will”, but also indicates that it is to do so “without allocation or proration to * * * any person owning or receiving [such] property”. It is no surprise then that this testamentary formulation has been the one most commonly recommended to accomplish the exoneration from tax apportionment of all property passing on death, whether under the will or otherwise.[3]
*545 This said, it is still necessary to confront the seeming conflict between the unambiguous will provision and the trust’s own clear direction that death taxes arising out of its existence be charged to its corpus. Ready resolution, however, is found in EPTL 2-1.8 (formerly Decedent Estate Law, § 124), which, while it has long compelled that estate taxes “be equitably apportioned among the persons interested in the * * * estate”, has always carried an exception “where a testator otherwise directs in his will” (see, e.g., Matter of Wise, 20 AD2d 55, affd 15 NY2d 591). In short, while acknowledging the policy favoring apportionment, the statute gives obeisance to the overriding wishes of the testator.
Thus, the decedent here, at the time she created the trust, must be assumed to have understood that she retained the right subsequently to shift the burden of the tax by an appropriate clause in her will. For whatever unstated familial, financial, fiscal or other considerations may have motivated her four decades later, this right the grantor-testatrix exercised. Therefore, the will she then executed, speaking, as it does, as of the time of the decedent’s death, takes precedence, insofar as it concerns apportionment or nonapportionment of the taxes then due, over the contrary provision of her earlier, nontestamentary disposition (Matter of Harbord, 197 Misc 760, affd 281 App Div 850, mot for lv to app den 305 NY 930; Matter of Annesley, 97 Misc 2d 1047, 1050; Will Provision — Estate or Inheritance Tax, Ann., 69 ALR3d 122, 215, § 4[i]).
Finally, we hold that EPTL 7-1.9 did not render the will’s pre-emption amendment of the trust’s apportionment scheme nugatory for noncompliance with the requirement for written consent of those beneficially interested. The history behind EPTL 7-1.9 and its predecessor, section 23 of the Personal Property Law,[4] informs us that the design *546 was to protect trust beneficiaries against unauthorized or unwarranted invasion (O’Hagan v Kracke, 165 Misc 4, 13, affd 253 App Div 632, mot for lv to app den 278 NY 741; Rosner v Caplow, 105 Misc 2d 592, 600).[5] Suffice it then to say that, though an irrevocable trust ordinarily cannot be modified except by consent of all those who may be adversely affected thereby, that did not prevent the settlortestatrix here from undertaking to pay trust tax obligations out of a different fund. The product of this action could only have added to and not cut down on the benefits available to the beneficiaries. In no way did it invade the trust (cf. Matter of Gilbert, 39 NY2d 663, 668-669). Consequently, it would be unreasonable to say that consent was required under these circumstances.
In fine, the order of the Appellate Division should be affirmed, with costs payable out of the estate to all parties appearing separately and filing separate briefs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order affirmed, etc.

. EPTL 7-1.9, as relevant here, reads as follows: “(a) Upon the written consent, acknowledged or proved in the manner required by the laws of this state for the recording of a conveyance of real property, of all the persons beneficially interested in a trust of property, heretofore or hereafter created, the creator of such trust may revoke or amend the whole or any part thereof by an instrument in writing acknowledged or proved in like manner, and thereupon the estate of the trustee ceases with respect to any part of such trust property, the disposition of which has been revoked.”

. On the date of decedent’s death, the trust principal was valued at $412,684.68 and the testamentary estate at approximately $543,000. By reason of the decedent’s retained life interest in the trust’s income, its corpus was includable in the decedent’s gross estate for tax purposes (Internal Revenue Code [of 1954] [US Code, tit 26, § 2036]). At stake in this litigation, according to both parties, is a tax obligation in the neighborhood of $100,000.

. (See, for example, 2 Fingar, Bookstaver & McQuaid, New York Wills and Trusts, 8 19:08: F01, F02, p 2236; Klipstein, Drafting New York Wills [2d ed], 8 4.18, pp 117-118; 3 Murphy’s Will Clauses, Form 17:1, p 678.12 [2]; New York Consolidated Laws Service, *545 Annotated Statutes with Forms, Book 13, EPTL 2-1.8, p 85, form 2, all containing clauses parallel to article 2 of the decedent’s will. Contrast 2 Fingar, Bookstaver & McQuaid, § 19:08: F05, p 2237; New York Consolidated Laws Service, p 85, form 3; 4 NY Forms, Legal & Business, § 24:293, p 179, for recommended clauses which exempt only probate assets from apportionment.)

. Section 23 of the Personal Property Law, which did not apply to real property and did not require that consents be acknowledged, was otherwise substantially similar to EPTL 7-1.9. Before the adoption of the latter, section 118 of the Real Property Law governed trusts of realty. Both were combined in EPTL 7-1.9.

. This protective measure, securing the right of cestuis que trustent to grant or withhold consent, was the aftermath of legislative indulgence of settlors of trusts, who, having foundered in the 1907 economic depression, sought to fuel a financial comeback by access to assets they had locked into trusts in balmier times (4 Powell, Real Property, par 566, p 428.44; see, also, Mariash, Revocation of Inter Vivos Trusts in New York, 16 Bklyn L Rev 41; Scott, Revoking a Trust, 65 Harv L Rev 617).