opinion of the court
Ernest L. Signorelli, S.
In this contested executor’s and trustee’s accounting proceeding, the court has been requested to determine the source of payment of estate taxes attributable to the inclusion of testamentary and nontestamentary assets in the decedent’s estate.
Jurisdiction has been obtained over the necessary parties to this proceeding, who have, by stipulation, waived a hearing and agreed to submit this matter to the court for decision based upon the account of the petitioner, the pleadings, the deposition of the attorney-draftsman of the will and inter vivos trust in issue, and memoranda of law filed by counsel for the petitioner, and for the individual and charitable beneficiaries of the inter vivos trust.
The decedent died, testate, on the 17th day of June, 1979, survived by three first cousins and issue of predeceased *1015 cousins on her mother’s side. Her husband passed away prior to her demise, on August 15,1975, and there were no children of the marriage.
Aside from making certain specific cash bequests to relatives and friends, the terms of the decedent’s last will and testament, dated April 9, 1976, make substantial preresiduary dispositions of her appointive property, received pursuant to the terms of her mother’s will, and nonappointive real and tangible personal property, to or for the benefit of her second cousin, and/or the issue of her second cousin, Jean Ellis Summers, and direct that the rest, residue and remainder of her estate be transferred and paid over to the trustee then acting under an indenture of trust, dated the 26th day of May, 1972, between herself as grantor, and the petitioner herein, as trustee, to be dealt with and disposed of as a part of the principal thereof.
In contrast to the terms of the decedent’s will, the provisions of the decedent’s inter vivos indenture of trust, dated May 26, 1972, as amended, on October 26, 1975, subsequent to the death of her husband, grant only a small sum of the trust estate ($2,000,000) to her second cousin, Jean Summers, and her issue, and dispose of the very sizable balance thereof (approximately $8,500,000), in trust, to and for the benefit of seven designated charities.
The decedent’s gross estate, consisting primarily of cash, and the assets of the aforesaid inter vivos trust, was valued, on the date of her death, at approximately $11,580,000, and was subject to combined Federal and New York State estate taxes of approximately $2,350,000.
Pursuant to the terms of article sixth of her will, the decedent made the following provision with respect to the payment of these taxes: “Article Sixth: I direct that all transfer, estate, inheritance, succession and other death taxes which shall become payable by reason of my death, whether in respect of property passing under this will or otherwise, shall be paid out of my residuary estate as an administration expense, without apportionment. I have directed in my indenture of trust referred to in Article Fifth hereof [the 1972 Trust] that if my residuary estate is *1016 insufficient, funds be made available from said trust in an amount sufficient to satisfy said taxes.”
Commensurate with the aforesaid provision in the decedent’s will, section I of the decedent’s 1972 trust indenture states as follows: “Section I. In case the grantor’s estate is insufficient to pay her funeral expenses, all claims against her estate and all death taxes chargeable to her estate and to satisfy all pre-residuary legacies or devises given by her will, the trustee shall pay to the grantor’s legal representatives, out of the trust fund, such sum or sums as such legal representative shall certify to be required to make good such deficiency. The trustee shall also pay out of the trust fund (i) all expenses of administration of the trust fund payable from the principal of the trust fund after the grantor’s death and until the distribution of the trust fund as hereinafter provided is completed, and (ii) all death taxes chargeable to the trust fund as a result of the grantor’s death.”
The account of the petitioner reflects that the decedent’s residuary assets on the date of her death were insufficient to fully satisfy the taxes assessed against her estate. As a consequence, the tax deficit of approximately $1,491,000 was charged by the petitioner against the assets of the trust estate.
By objections to the account filed with the court on April 7, 1983, and subsequently amended on August 30, 1983, the charities take issue with the manner in which the taxes were assessed by the petitioner against the trust fund. More specifically, it is the position of the objectants that the failure of the tax clause in the indenture of trust to particularize the source of funds, within the trust, from which the tax deficit of the estate was to be derived, mandated apportionment of the deficiency against the individual beneficiaries of the trust, in accordance with the provisions of EPTL 2-1.8, and correspondingly, exonerated them from bearing any burden of the taxes dué.
In opposition to the objectant’s contentions, the petitioner and the individual beneficiaries of the trust maintain, largely on the basis of the recent decision by the Court of Appeals in Matter of Cord (58 NY2d 539), that the statutory rules of apportionment have no application to the *1017 instant case, by virtue of the tax clause in the decedent’s will specifically directing against apportionment of estate taxes. Moreover, the petitioner maintains that to direct apportionment would be in derogation of the express intent of the testator as evidenced by the testimony of the attorney-draftsman of the instruments.
Considered in this light, the within controversy requires the court to determine what, if any, effect the provisions of the decedent’s will have with respect to the apportionment of estate taxes against the assets of the decedent’s nontestamentary, trust estate.
In the absence of a direction in the testator’s will to the contrary, EPTL 2-1.8 (subd [a]) mandates that estate taxes, paid or payable by the fiduciary, with respect to any property required to be included in the taxable estate of the decedent, are to be equitably apportioned amongst all the persons therein interested, in accordance with the formula set forth in EPTL 2-1.8 (subd [c]). The statute further provides, however, that any direction as to apportionment contained in the testator’s will, shall relate only to the property passing thereunder, and not, unless otherwise expressed, to nontestamentary assets includable in the decedent’s taxable estate. (EPTL 2-1.8, subd [d].)
The first sentence of article sixth of the decedent’s will makes specific provision for the payment of taxes due by reason of the testator’s death, by directing “that all transfer, estate, inheritance and other death taxes, whether in respect of property passing under the will or otherwise, be paid out of the residue, as an administration expense, without apportionment”.
It has been uniformly held that such a provision is sufficient to exonerate both preresiduary and nontestamentary assets from the burden of estate taxes, within the purview of EPTL 2-1.8. (Matter of Hamilton, 69 Misc 2d 246; Matter of Owen, 71 Misc 2d 179; Matter of Sheldon, 4 Misc 2d 119.) Indeed, the apparent intent of the decedent, as expressed in the above-quoted language, was to repose the initial liability for satisfying all the taxes of her estate upon her residuary assets.
*1018 In the instant case, however, the residuary assets of the decedent’s estate were insufficient to satisfy the taxes in full.
As a rule, where the fund indicated in the will of a decedent as the source of all tax payments, is either nonexistent or insufficient to pay estate taxes in full, the statutory rule of apportionment becomes operative, and the tax is required to be equitably allocated against all persons interested in the estate in proportion to their respective benefits. (Matter of Hamilton, 69 Misc 2d 246, supra; Matter of Falconer, 138 NYS2d 666; Matter of Halsted, 174 Misc 292; Matter of Kramer, 78 Misc 2d 662.) A testator may, however, make provision for such a contingency in his will in order to mitigate or preclude statutory apportionment where feasible. (Matter of Kramer, supra.)
In the case at bar, the testator evidently foresaw the possibility of her residuary assets being insufficient to fully pay the tax liability of her probate and nonprobate estate, and thus, specifically directed, in the second sentence of article sixth of her will, that the deficiency be satisfied from the assets of her inter vivos trust estate.
The objectants, however, argue that inasmuch as the trust instrument is silent as to how the tax deficiency is to be charged against and paid from the trust estate, the apportionment statute, i.e., EPTL 2-1.8, should apply. This contention ignores the Court of Appeals decision in Matter of Cord (supra), where the court held the provisions of the decedent’s will, as opposed to those of a previously executed inter vivos trust, to be the paramount expression of the decedent’s intent on the issue of apportionment of estate tax liability. The court, in fact, notes that in distinction to the inter vivos trust instrument herein, which is silent as to tax apportionment, the inter vivos trust instrument before the Court of Appeals in Cord (supra) contained a tax apportionment clause which was in glaring conflict to the tax apportionment clause in the decedent’s will. Hence, pursuant to the very clear and unambiguous direction in article sixth of the decedent’s will herein, any deficit of estate taxes was to be paid from the assets of the inter vivos trust estate as an expense of administration, without apportionment amongst the beneficiaries thereof.
*1019 In further support of, and in confirmation of, the decedent’s testamentary desires as expressed in her will, the petitioner submits the uncontradicted testimony of the attorney-draftsman, who, at an examination before trial in this matter, certified the intent of the decedent to exonerate her heirs from the burden of estate taxes as follows:
“Q Now, under Mrs. Collia’s estate plan, was it Mrs. Collia’s desire that estate taxes, if any with respect to any bequests to the Summers Family, be borne not by the Summers Family but by the charities who were receiving the bulk of the estate?
“A Yes, in discussions with her, she made it clear that when she talked about leaving a dollar amount to someone, she was — she wanted to leave that person a dollar amount, not a dollar amount reduced by taxes. And accordingly, from the beginning all of the taxes, the tax clauses in her will had always directed that taxes be paid out of the estate without apportionment as an administration expense * * *
“Q Secondly, based on her instructions to you and her attorney/client relationship with her over a period of many years, what was her intention as to payment of estate taxes generated by the Summers Trust? That is, did she or did she not intend these taxes to be subtracted from the $2,000,000 Summers Trust? * * *
“A Yes, when I was at Mrs. Collia’s residence on September 30th the point was specifically discussed with her, that to create a $2,000,000 trust for Mrs. Summers was going to mean that the charities were not going to receive that two million, but that the taxes would be paid out of the charitable share, and that would significantly decrease further the amount the charity was going to receive. And she stated to me that it was her desire to have a $2,000,000 trust created for Mrs. Summers and her family.”
The objectants contend that this testimony is irrelevant to the issue at bar, maintaining that extrinsic evidence of intent is inadmissible to show a direction against apportionment of taxes.
In a construction proceeding, extrinsic evidence is admissible to explain the intention of the testator where the subject provisions of the will are too ambiguous to supply *1020 an indication. (27 Carmody-Wait 2d, Proceedings for Construction of Will, § 162:24.) While the court finds neither the decedent’s will, nor her inter vivos trust ambiguous on the question of apportionment, were it to engage in this assumption, it would have to subscribe to the arguments of the petitioner and consider the testimony of the attorney-draftsman as persuasive evidence of the decedent’s desires to avoid the application of the tax apportionment statute. Although the objectants, in their briefs, cite several judicial authorities to the contrary in this regard, to wit, Matter of Ganter (46 Misc 2d 518); Matter of Kindermann (48 Misc 2d 607); Matter of Myers (20 Misc 2d 990, mod on other grounds 10 AD2d 823, affd 8 NY2d 947), the Court of Appeals, in Matter of Cord (supra), did, nevertheless, engage in a review of the testimony of the attorney-draftsman, finding it irrelevant because his testimony did not shed any light upon the decedent’s intentions.
Accordingly, the account of the petitioner is settled as filed.