OPINION OF THE COURT
Renee R. Roth, S.
At issue here is a novel question of tax apportionment, namely, whether the donee of lifetime gifts is required to pay *133 the additional tax where the inclusion of such gifts grosses-up the estate into a higher tax bracket.
Testatrix, Rose Coven, died on August 17, 1982. Her will divided her estate between her son Stuart and her daughter Roberta. To Roberta, Mrs. Coven left her residuary estate; to Stuart she left substantial preresiduary dispositions. Perhaps because such dispositions were unequal, Mrs. Coven expressly provided in article second of her will as follows: "All estate, inheritance, legacy, successor or transfer taxes (including any interest and penalties thereon) imposed * * * by reason of my death, whether or not such property passes under this my will and whether such taxes be payable by my estate or by any recipient of any such property, shall be paid by my Executors, all as part of the expenses of the administration. I direct that the bequest of each beneficiary hereunder shall be burdened with a pro rata share of all of my administration expenses including but not limited to the aforesaid tax obligation in the same proportion that the bequest bears to my overall estate, as finally determined for federal estate tax purposes.”
The tax apportionment problem is created by the fact that in 1981 and 1982 Mrs. Coven made substantial gifts totaling $320,660 to her son Stuart. Those gifts were never part of her probate estate. However, by virtue of the 1976 Tax Reform Act (TRA 1976) such gifts entered into the computation of the estate tax payable by her estate.
It is noted that prior to December 31, 1976, there were major tax benefits to be gained by making inter vivos gifts. First, the tax rate on gifts was three quarters of the tax rate on estates. Second, the making of the gift and the payment of the gift tax reduced the size of the estate by both the amount of the gift and the amount of the gift tax paid on the gift.
For gifts made after December 31, 1976, the 1976 TRA did away with all such advantages. First, the gift tax rate was made the same as the estate tax rate. Second, the method of computation of the new unified tax rate required that all post-December 31, 1976 gifts (with exceptions not applicable here) be added back in determining the tentative tax.
Despite the credit for taxes paid and the new unified credit (which in 1982 was $62,800), the fact that Stuart received $320,660 in lifetime gifts measurably increased the total Federal and New York taxes paid on Mrs. Coven’s taxable estate.
The following brief review will help illustrate the issue in this case. The Federal estate tax is calculated by first deter *134 mining the "tentative tax” on the total of (1) the taxable estate and (2) any post-December 31, 1976 adjusted taxable gifts (Internal Revenue Code [26 USC] § 2001 [b]). In this case, the "tax base amount” totaled $886,062 on which the tentative tax was $301,336. From such tax were then subtracted: the gift tax payable ($32,994); the unified credit in 1982 ($62,800); and the State death tax credit ($12,591) yielding a tax of $192,951.
Although the deduction of the gift tax payable avoids double taxation, the inclusion of the gifts in the tax base pushes the estate into a higher tax bracket. Because of the higher tax rate applicable to an $886,000 estate vis-á-vis a $565,000 estate, taxes were increased by about $13,000.
Stuart and his coexecutor have accounted to the court. Roberta has made a novel objection to schedule H of the account, namely, that Stuart, and not the estate, should be required to bear the increased estate tax caused by his lifetime gifts. Although the unified tax has been in effect since 1976 and lifetime gifts have been grossed-in since that date, this appears to be the first time such an objection has been advanced.
We turn to article second of Mrs. Coven’s will which provides that estate taxes shall be apportioned against the "bequests” made in her will. The clause is not particularly helpful. Although it refers to property passing outside the will as well as under the will, the phrase "property not passing under my will” no doubt refers to such property passing upon Mrs. Coven’s death and not as lifetime gifts. Thus, even though article second appears to be an "otherwise” direction by testatrix as contemplated by EPTL 2-1.8 (our tax apportionment statute), it does not require that Stuart bear the added tax burden caused by the lifetime gifts he received from his mother.
EPTL 2-1.8 is not any more helpful in this instance than the tax clause. Such statute was enacted long before TRA 1976 and its unified tax structure. It was purposed to reverse the inequity of the common-law presumption of "tax burden on the residuary” where the will is unclear or silent on tax apportionment (see, 9 Rohan, NY Civ Prac | 2-1.8 [1]). But EPTL 2-1.8 makes no provision for apportioning estate taxes against lifetime gifts. In the absence of an "otherwise” direction in the will, the statute directs apportionment of estate taxes "with respect to any property * * * included in the *135 gross tax estate of a decedent” (EPTL 2-1.8 [a] [emphasis added]). The phrase "gross tax estate” does not technically include adjusted taxable gifts (see, Internal Revenue Code [26 USC] § 2001 [b]) which are added to the tax calculation, as described above, in a separate step after the taxable estate has been determined. Moreover, Internal Revenue Code (26 USC) § 2033 provides that the value of "the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death”. Since the gifts to Stuart were completed in 1982, Mrs. Coven clearly had no interest in those assets at the time of her death.
As previously discussed, TRA 1976 eliminated the different tax rates for gifts and estates so that all transfers of property would be taxed at the same rate (Stephens, Maxfield and Lind, Federal Estate and Gift Taxation ]f 2.01 [4th ed]). There is, no doubt, an inequity caused by the gross-up of the estate into a higher tax bracket as a result of the lifetime gifts. However, neither the governing statute (EPTL 2-1.8) nor article second of the will requires an apportionment of estate tax against adjusted taxable gifts.
Based upon the foregoing, the court determines that the executors have properly apportioned estate taxes. Roberta’s objection to schedule H of their account is dismissed.