OPINION OF THE COURT
Anthony A. Scarping, Jr., S.
This is a contested proceeding by Anthony Rhodes, David Rhodes, and Robert Sylvor, Esq., as coexecutors of the estate of Silas H. Rhodes (decedent), to apportion estate taxes against the recipients of specific devises, general bequests and gifts made within three years of decedent’s lifetime. Additionally, petitioners seek authority to sell real property in order to raise funds to pay the estate taxes.
Opposition has been filed by the devisees, beneficiaries of preferred bequests, and the guardian ad litem appointed to represent infant beneficiaries and a beneficiary who is incarcerated. In addition, certain beneficiaries seek a determination that by commencing this proceeding Anthony and David triggered the in terrorem clause in decedent’s will.
Decedent died testate on June 28, 2007 survived by three sons Anthony, David, and Steven and two grandchildren, Jennifer and Benjamin Rhodes, issue of a predeceased son Andrew. His will and codicils dated April 16, 2004, November 22, 2004 and June 28, 2006 respectively were admitted to probate and letters testamentary issued to petitioners.
Under article first, decedent sets forth a statement of his testamentary intent:
“I have given much thought and deliberation to the provisions which I make for each of you .... While I have equal love and affection for my sons ... I *768 recognize that I make disproportionate provisions for my sons ... for reasons I deem sufficient. In arriving at the specific provisions which I make ... I have taken into account, among other factors, the provisions which I have made for each of them during my lifetime, in certain cases my son’s connection with the particular assets which I bequeath to him or his issue, and in the case of the disposition of my business interests, the efforts certain sons have made in helping me run and develop the particular business.”
Decedent then gave his personal property in equal shares to his issue (article second), specifically devised real property as follows: 411 Conklintown Road, Goshen, New York to Steven (article third a); 410 Conklintown Road, Goshen, New York to granddaughter Cameron (article third b); 65 Cherry Street, Katonah, New York to Anthony (article third c); 15 Reyburn Road, Katonah, New York to Benjamin (article third e as amended by the second codicil); and 49 Reyburn Road, Katonah, New York to Jennifer (article third f); gave $100,000 to each of his grandchildren Katherine and Eric (article third d as amended by the second codicil); gave $25,000 to a friend Eli Edwards (article fifth a) and $200,000 to a friend Gregory Winters (article fifth b); and gave his interest in the School of Visual Arts and DAST Holding Corp. (DAST) to David (15 shares) and Anthony (10 shares) (article fourth as amended by the first codicil). The residuary estate is disposed of under article sixth in equal shares to decedent’s three sons.
The tax clause, set forth under article eighth, provides, in part, as follows:
“All inheritance, succession, transfer and estate taxes . . . payable by reason of my death in respect of all items included in the computation of such taxes which shall have passed under the provisions of this Will, shall be paid by my Executors as follows:
“(A) All taxes with respect to property passing under this Will shall be apportioned in accordance with the law of New York, notwithstanding the foregoing, I direct that any such taxes resulting from the bequests under Clauses second, third and fifth of this Will shall be paid by my Executor out of my residuary estate, without apportionment or reimbursement from any beneficiary.
“(B) I intend that all taxes described in paragraph *769 (A) of this Clause with respect to property passing outside of the provisions of this Will shall be apportioned in accordance with the law of New York ....
“(D) I wish to record that I have given great consideration as to how I have directed that the taxes described in paragraph (A) of this Clause are to be paid with respect to property passing under and outside my Will and to whom I have burdened with the payment of such taxes. I believe that the provisions which I have arrived at are equitable for all of my family members.”
In December 2005, decedent transferred the property known as 411 Conklintown Road, Goshen to his son Steven and Steven’s wife Karen. A contract of sale was signed under which Steven and Karen agreed to pay decedent the gift tax in the amount of $418,844 and any transfer tax associated with the same.[1] Decedent agreed to receive the funds, to timely pay the gift tax and to “hold-harmless the purchasers from any claim thereof.” A gift tax return was filed and is the subject of an audit by the Internal Revenue Service (IRS). Steven and Karen have filed a claim against the estate seeking to be held harmless in the event any additional tax is assessed by the IRS against the transfer.
The federal estate tax return (70S)[2] shows that in addition to the transfer of the Goshen property to Steven and Karen, decedent made numerous other gifts during the three-year period preceding his death and paid a total $1,144,277 in gift tax. The gift tax paid is included for purposes of computing the estate tax (Internal Revenue Code [26 USC] § 2035 [b]).
The parties refer to the articles second, third and fifth devises and bequests as “preferred” dispositions. With regard to the preferred dispositions, the tax clause clearly sets forth an otherwise direction against statutory apportionment (EPTL 2-1.8) by providing that the allocable estate tax is to be borne by the residuary estate (see Matter of Cord, 58 NY2d 539 [1983]; Matter of Bruce, 131 AD2d 670 [1987]).
*770 Petitioners maintain that where the residuary estate is insufficient to cover the estate tax then apportionment among all recipients is the rule. As a preliminary matter, respondents counter that petitioners have failed to demonstrate that there is in fact a shortfall of the residuary estate and thus the application is premature.
In connection with the filing of the 706, petitioners indicate that there is approximately $1,360,285 available to pay administration expenses including legal fees in the estimated amount of $750,000, accountant’s fees of $50,000 and miscellaneous expenses (which includes the appraisal of the business) of $375,336. A determination of such expenses is not presently before the court.
Assuming the administration expenses are allowed, petitioners assert that the residuary estate will total $637,000. The tax attributed to the preferred transfers is approximately $2,000,000. In such instance then there would be a shortfall of the residuary in excess of $1,000,000. Even if we assume that a portion of such expenses will not be allowed,[3] it appears that the residuary estate will still be insufficient to pay the estate tax, albeit the difference being significantly less. Accordingly, the application is timely.
Respondents and the guardian ad litem further argue that the proposed apportionment is contrary to decedent’s intent. They assert that the source for payment of the tax is the business interests bequeathed to Anthony and David under article fourth.
The question then is whether decedent intended to exonerate the preferred interests from paying any estate tax, or whether a shortfall in the residuary results in apportionment among the recipients. A construction is necessary to reach such determination. In that regard the law is well settled, the prime consideration in all construction proceedings is the intention of the testator as gleaned from a reading of the will (Matter of Fabbri, 2 NY2d 236 [1957]; Matter of Jones, 38 NY2d 189 [1975]).
While petitioners are correct that under certain circumstances the estate tax may be apportioned against an otherwise exempt disposition where the residuary estate is insufficient *771 (see Matter of Volckening, 70 Misc 2d 129 [1972]; Matter of Kramer, 78 Misc 2d 662 [1974]; Matter of Taylor, 116 NYS2d 314 [1952]), such is the case only where the decedent has not expressed a contrary intent. As the court stated in Matter of Cord (58 NY2d at 545), “the statute [EPTL 2-1.8] gives obeisance to the overriding wishes of the testator.” And, the testator’s intent is to be ascertained “ ‘not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed’ ” (Matter of Bieley, 91 NY2d 520, 525 [1998]).
In other words, every case is unique. In applying the foregoing rule of construction, many courts have found that the testator not only provided an otherwise direction against tax apportionment, but also intended that certain beneficiaries be exempted from paying any estate tax (Matter of Caswell, 239 App Div 695 [1934]; Matter of Collia, 123 Misc 2d 1014 [1984], affd 118 AD2d 778 [1986]; Matter of Harmse, 3 Misc 3d 1104[A], 2004 NY Slip Op 50381[U] [2004]).
The facts here resemble those found in Matter of Caswell where there was a disparity in the distribution of the estate among the beneficiaries and a preference expressed by the testator to exonerate certain beneficiaries from payment of estate tax. The relevant provisions under decedent’s will demonstrate his intent to exempt the preferred dispositions from sharing in the estate tax and to impose upon the article fourth interests such burden.
An apportionment of the tax shortfall against the preferred dispositions would significantly reduce the interests of the recipients. Such beneficiaries include decedent’s children, grandchildren and two friends, one of whom, Gregory Winters, is described by decedent as the person “who has looked after me so diligently during the later years.” It does not appear from the will that decedent intended these beneficiaries to receive less than the share he devised or bequeathed to them.
Decedent is unequivocal in his direction that the beneficiaries of the preferred interests are to receive their interests “without apportionment or reimbursement” (emphasis added). The addition of the words “or reimbursement” is relevant here. Such words imply that decedent foresaw the possibility that his residuary estate may be insufficient to pay the tax but nevertheless *772 intended these beneficiaries to receive their inheritance intact. In the event that the tax exceeds the residuary estate then the preferred beneficiaries are not required to reimburse the estate for any portion thereof.
Equally clear is that decedent deliberately omitted the article fourth bequests to Anthony and David from such exoneration. Decedent states that he gave great thought as to the allocation of estate taxes. He considered the disproportionate distribution of his estate, prior gifts and the interests his children would receive from an insurance trust[4] as the basis for his belief that the resulting tax burden would be equitable for all.
In other words, decedent knowingly imposed the burden of paying the estate tax upon the two beneficiaries who received and were to receive a disproportionate share of his estate. By doing so, decedent believed the result would be “equitable” for his entire family, i.e., those receiving less would not be required to pay the estate tax.
Petitioners argue that an imposition of the estate tax upon the article fourth bequests would effectively defeat decedent’s testamentary plan and destroy the business he created. It is noted that in 2003 decedent gave Anthony and David each a minority interest in DAST. Petitioners contention is not supported by the information set forth on the 706. Together the business interests bequeathed by article fourth are valued at $12,000,000 with the underlying real estate owned by DAST valued between $90,000,000 and $100,000,000.[5]
The transfers and bequests to Anthony and David result in their receiving a disproportionate share (perhaps as high as 90%) of decedent’s estate which he clearly intended given their contribution to the businesses. The combined value of such interests are sufficient to enable the recipients to pay or finance payment of the estate tax. Moreover, the will does not evince the decedent’s intent to provide for the continuation of the business at the expense of the other beneficiaries, but only that his sons receive such interests, and thus a disproportionate share of his estate, in recognition of their efforts in developing the business. Having transferred and bequeathed the majority of his estate to Anthony and David, it is clear *773 that decedent did not intend to mock his remaining beneficiaries by further reducing their inheritance through the assessment of estate taxes (see Matter of Patouillet, 158 Mise 2d 473 [1993]).
Based upon the foregoing, any shortfall of the residuary estate to cover the estate tax shall be paid from the interests bequeathed under article fourth. Having so decided, petitioners’ request to sell real property is rendered moot.
We turn now to the question of whether the donees of gifts made within three years of death are responsible for paying estate tax attributable to the inclusion of the gift tax paid on such transfers.
To reiterate, under article eighth b decedent provides that with regard to property passing outside his will, taxes are to be apportioned in accordance with New York law. Absent an otherwise provision, it is settled that EPTL 2-1.8 does not authorize the apportionment of estate tax against inter vivas gifts made by a decedent (Matter of Metzler, 176 AD2d 15 [1992]; Matter of Coven, 148 Misc 2d 132 [1990]). As the court in Metzler (at 18) instructs:
“EPTL 2-1.8 does not, itself, define the term ‘gross tax estate’. Thus, the meaning of that term can only be determined from the tax statutes. The [IRC] defines the gross tax estate as ‘the value of all property to the extent of the interest therein of the decedent at the time of his death’ (26 USC § 2033).
The inter vivas gifts made to petitioner were not a part of the decedent’s gross tax estate because she had no interest in such assets at the time of her death. Thus, apportionment . . . could not have been made against the inter vivas gifts . . . .”
As with Metzler and Coven, the gifts here do not form a part of decedent’s “gross tax estate” and thus are not included therein.
Petitioners contend that the result of Metzler and Coven should be different where the issue involves the estate tax attributable to the inclusion of the gift tax paid as opposed to the inclusion of the gift. The holdings of the Metzler and Coven courts are each based upon the fact that the subject gift did not form a part of decedent’s gross tax estate as defined by Internal Revenue Code (26 USC) § 2033. Neither court addressed the question here whether the donee of a gift must pay his or her *774 ratable share of estate tax resulting from inclusion of the gift tax paid.[6], [7]
Section 2035 of the Internal Revenue Code also defines the term “gross estate.” Subdivision (b) provides that “[t]he amount of the gross estate . . . shall be increased by the amount of any tax paid ... on any gift made by the decedent . . . during the 3-year period ending on the date of the decedent’s death.” Gift taxes paid within three years of death are reported on schedule G of the 706 and are included in part 5 — Recapitulation— as a component of the decedent’s gross estate. The total from part 5 — Recapitulation—is entered as the total gross estate on line 1 of part 2 — Tax Computation Schedule.
The court in Coven (148 Misc 2d at 135) held that “[t]he phrase ‘gross tax estate’ does not technically include adjusted taxable gifts (see, [IRC] [26 USC] § 2001 [b])” because such gifts are added after the tax computation schedule. Unlike adjusted taxable gifts which are added to the tax calculation in a separate step after the gross estate has been determined (Coven), the gift taxes paid are a component of the gross estate as defined by Internal Revenue Code (26 USC) § 2035 (and thus for the application of EPTL 2-1.8 [Matter of Metzler]) and as such are subject to apportionment.
Based upon the foregoing, the donees of the gifts made within three years of decedent’s death are responsible for paying their ratable share of the estate tax attributable to the inclusion of the gift tax paid. This determination does not resolve the question whether Steven and Karen are responsible for paying any additional gift tax if imposed by the IRS following the audit of the gift tax return. The claim shall be addressed in a proceeding to determine its validity or as an incident to a judicial accounting.
Finally, we turn to respondents’ counterclaim that by commencing this proceeding Anthony and David each violated the in terrorem clause, thus forfeiting his respective interest under *775 decedent’s will. EPTL 3-3.5 (b) (3) (E) clearly provides that the institution of a construction proceeding shall not result in the forfeiture of any benefit under a will (see Matter of Zorskas, 18 Misc 3d 600 [2007]). Accordingly, the counterclaim is denied.
The fee of the guardian ad litem, Lori Ann Douglas, Esq., shall be fixed by a subsequent decision to be rendered together with issuance of a decree.

. In the contract, Steven and Karen are referred as “purchasers” and decedent as the “seller.”

. Following the submission of this proceeding, the court directed petitioners to file the 706 and to serve a copy of the same upon all counsel. The parties were given a further opportunity to file additional papers in support of their respective positions.

. It is noted that petitioners will have the burden to prove the proprietary of the expenses of administration in an accounting proceeding (Matter of Shulsky, 34 AD2d 545 [2d Dept 1970], appeal dismissed 27 NY2d 743 [1970]).

. Respondents represent that the cash value of the insurance trust was distributed in 2003.

. Such values do not include any mortgage or other lien against the property.

. Petitioners also rely upon a decision, Matter of Kennedy (NYU, Oct. 10, 2001, at 21, col 6 [Sur Ct, Nassau County]), wherein the court held that the gift tax paid was subject to apportionment. The determination that the donee was obligated to pay the tax was supported by the canons of construction which favor a surviving spouse. A contrary holding would have resulted in a reduction of the interest passing to decedent’s spouse and a corresponding increase in the estate taxes due. Moreover, the donee who appeared in the proceeding consented to the requested relief.

. It does not appear to this court that the court in Kennedy departed from the holdings of Meltzer and Coven, neither of which were cited therein.