149 T.C. No. 8

UNITED STATES TAX COURT

ESTATE OF SHELDON C. SOMMERS, DECEASED, STEPHAN C. CHAIT,
TEMPORARY ADMINISTRATOR, Petitioner, AND WENDY SOMMERS,
JULIE SOMMERS NEUMAN, AND MARY LEE SOMMERS-GOSZ,
Intervenors <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9306-07.                         Filed August 22, 2017.

D made valid gifts to Ns, his nieces, in December 2001 and
January 2002. <u>See</u> <u>Estate of Sommers v. Commissioner</u>, T.C. Memo.
2013-8. D died in November 2002. W, D's surviving spouse,
succeeded to property she owned jointly with D, and D's will
bequeathed and devised to W all of his estate remaining after payment
of debts and expenses. W succeeded to or was entitled to receive all
of the property included in D's gross estate, within the meaning of
I.R.C. sec. 2031(a). In accordance with the agreements governing
their gifts from D, Ns paid the gift tax due on those gifts. P has filed
three motions for partial summary judgment seeking determinations
that (1) the gift tax owed at D's death on his gifts to Ns is deductible
under I.R.C. sec. 2053, (2) the estate is entitled to a marital deduction
under I.R.C. sec. 2056 equal to the value of D's nonprobate property
that W received or to which she succeeded that, under applicable
State law, was exempt from D's debts and the expenses of the estate,

- 2 -

and (3) any Federal estate tax due must be apportioned to Ns and thus does not reduce the estate's marital deduction. Ns have filed their own motion for partial summary judgment that none of the estate tax liability can be apportioned to them.

Held: Because the estate's payment of D's gift tax liability would have given rise to a claim for reimbursement from Ns under the agreements governing the gifts, the gift tax owed on those gifts at D's death is not deductible under I.R.C. sec. 2053(a). P's gift tax motion accordingly will be denied.

Held, further, P's motion for partial summary judgment regarding the effect of debts and claims on the marital deduction allowed by I.R.C. sec. 2056(a) will be denied because the amount of the allowable deduction turns on the factual question of the extent to which assets otherwise exempt from claims against the estate were used to pay estate debts and expenses.

Held, further, under the New Jersey estate tax apportionment statute, no portion of any estate tax due can be apportioned to Ns. The existing record does not allow for a determination of the effect of the estate tax on the allowable marital deduction. Accordingly, Ns' estate tax apportionment motion will be granted and P's will be denied.

David N. Narciso and Matthew E. Moloshok, for petitioner.

Michael A. Guariglia and Vlad Frants, for intervenors.

Robert W. Mopsick and Lydia A. Branche, for respondent.

OPINION

HALPERN, Judge:  Respondent determined a deficiency of $542,598 in the Federal estate tax of the Estate of Sheldon C. Sommers (decedent) resulting from the inclusion in the value of decedent's gross estate under section 2035(b) of alleged gift tax on gifts decedent made to his nieces (the intervenors in the case) in 2001 and 2002, less than three years before his death in November 2002.[1]  The parties have stipulated the amount of gift tax due as a result of decedent's gifts to intervenors and, on the basis of that stipulation, we entered a decision in a related case involving the gift tax deficiency respondent determined.  We now have before us in this case three motions for partial summary judgment filed by petitioner and one filed by intervenors.  Petitioner seeks determinations that (1) the gift tax owed at decedent's death on his gifts to intervenors is deductible under section 2053, (2) the estate is entitled to a marital deduction under section 2056 equal to the value of decedent's nonprobate property that his spouse, Bernice Sommers (Bernice) received or to which she succeeded that, under New Jersey law, was exempt from decedent's debts and expenses of the estate, and (3) any

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Federal estate tax due must be apportioned to intervenors and thus does not reduce the estate's marital deduction. Respondent objects to petitioner's first two motions but supports petitioner's third motion. Intervenors support petitioner's first two motions, object to his third motion, and have filed their own motion for partial summary judgment determining that none of the estate tax liability can be apportioned to them. Both petitioner and respondent oppose intervenors' motion. For the reasons explained below, we will deny each of petitioner's motions and grant intervenors' motion.

## Background

### Decedent's Gifts to His Nieces

In 2001, decedent sought legal advice concerning his intention to transfer works from his art collection to the three nieces who were his closest living relatives. To reduce--or, ideally, eliminate--any gift tax on the gifts, his attorneys offered two proposals. First, they recommended that he transfer the artwork to a newly formed limited liability company and then make gifts to his nieces of units representing ownership interests in the entity (units). That recommendation rested on the expectation that, as a result of applicable valuation discounts, the appraised value of the units would be less than the value of the assets they represented. The attorneys also recommended that decedent make the intended gifts in two stages,

transferring some units to each niece on or before December 31, 2001, and the rest thereafter. Spreading the gifts across the end of the year would increase the portions of the gifts that could be covered by the annual gift tax exclusion provided by section 2503(b) and also allow decedent the benefit of an increase in the unified transfer tax credit scheduled to take effect in 2002. The plan envisioned decedent's transferring to his nieces in 2001 the maximum number of units possible without incurring gift tax and then completing his gifts of the units the following year.

In accordance with that plan, decedent transferred artwork to Sommers Art Investors, LLC (LLC), and executed two sets of gift and acceptance agreements with his nieces, the first dated December 27, 2001, and the second dated January 4, 2002. When decedent and his nieces initially executed the agreements, they left blanks for the number of units included in each transfer, pending completion of an appraisal of the artwork. The commissioned appraisal, when completed in March 2002, assigned a value to the artwork that led decedent's counsel to conclude that dividing the transfers of units across the end of 2001 would not allow for the complete avoidance of gift tax. After the nieces agreed to pay any gift tax resulting from the 2002 transfers, the gift and acceptance agreements were completed by filling in the blanks for the number of units covered by each transfer.

In addition, decedent and his nieces amended each of the 2002 agreements by adding a provision in which each donee "agree[d] to pay the gift taxes, if any, relating to the gift [of] the units, including, without limitation, any gift taxes, penalties, and interest that may later correctly be assessed."  None of the 2002 agreements refer to the apportionment of any Federal estate tax liability resulting from the gifts.  While neither agreement provides for the donee's assumption of any liability other than gift tax, neither specifically exculpates the donee from other liabilities.

Execution of Decedent's Last Will

In April 2002, decedent executed what turned out to be his last will.  Article I of that will directs Bernice, his executrix and then ex-wife, "to pay all of * * * [his] just debts * * * including all funeral and burial costs, and expenses of * * * [his] last illness, and all costs and expenses of administering and settling * * * [his] estate."  Article II bequeaths and devises to Bernice all of decedent's estate remaining after payment of those debts.

Efforts To Recover the Artwork Transferred by Gift

In June 2002, shortly before remarrying Bernice, decedent initiated litigation in Indiana against his nieces challenging the validity of the purported

gifts and seeking return of the artwork. That litigation, and similar litigation Bernice initiated in New Jersey, ultimately upheld the validity of the gifts.

Decedent's Estate Tax Return

Decedent died on November 1, 2002. The Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, that Bernice filed reported the following amounts:

| Item | Amount |
|---|---|
| Insurance naming Bernice as beneficiary | $29,413.30 |
| Insurance naming estate as beneficiary | 690.00 |
| Property held with Bernice in tenancy by the entireties | 1,145,665.93 |
| Property held with Bernice in joint tenancy | 35,394.05 |
| Potential claim against trust of which decedent was beneficiary and cotrustee | 200,000.00 |
| Artwork | 1,750,000.00 |
| Other miscellaneous property | 59,494.00 |
| Lifetime transfers | 507.34 |

| | | |
|---|---|---|
| Annuity naming Bernice as beneficiary | | 523,313.01 |
| Gross estate | | 3,744,477.63 |
| Legal and accounting fees | ($310,000.00) | |
| Other expenses | (14,513.39) | |
| Debts | (88,946.47) | (413,459.86) |
| Marital deduction | | (3,330,510.43) |
| Taxable estate | | 507.34 |

## Adjustments on Exam

On examination, respondent increased decedent's taxable estate from $507.34 to $1,092,106.68. The increase of $1,091,599.34 reflects three adjustments that follow from respondent's determination that decedent's transfers of units were valid gifts. First, respondent included in the value of decedent's gross estate the gift tax he determined to be due as a result of the 2002 gifts, $510,648, because decedent had made those gifts less than three years before his death. See sec. 2035(b). Second, respondent excluded from decedent's gross estate the $1,750,000 value the estate had assigned to the artwork that decedent had transferred to the LLC. And, third, respondent reduced the marital deduction allowable to the estate by $2,330,951.34. The decrease in the allowed marital deduction reflected respondent's determination that the estate tax liability of

$542.593.34 resulting from the section 2035(b) inclusion would have to be paid out of marital assets.

The Prior Report

In a prior report in this case, Estate of Sommers v. Commissioner, T.C. Memo. 2013-8, we addressed prior motions for partial summary judgment filed by Bernice and respondent. (Petitioner in the present case serves as substitutionary administrator of decedent's estate following the deaths of Bernice and the prior substitutionary administrator.) Petitioner's prior motion asked us to rule that decedent did not make completed gifts of the units until April 11, 2002, when the gift documents were completed by filling in the number of units covered by each agreement, with the consequence that the units were includible in the value of decedent's gross estate under sections 2035 and 2038. Petitioner's motion also asked for a ruling that, by reason of the inclusion of the units in decedent's gross estate (rather than just the gift tax paid on decedent's 2002 gifts of units), all of the estate tax due was apportionable to intervenors under the New Jersey estate tax apportionment statue. Respondent's motion asked us to rule that decedent had made completed gifts of units to his nieces on December 27, 2001, and January 4, 2002. We granted respondent's motion and denied petitioner's motion regarding the timing of decedent's gifts. Because the parties had not at that stage adequately

briefed the estate tax apportionment issue, we denied as premature petitioner's motion for a ruling that the estate tax must be apportioned to intervenors.

## Stipulation and Payment of Gift Tax Liability

Following our prior report, the parties stipulated that decedent's gift tax liabilities for 2001 and 2002 were zero and $273,990, respectively. After the entry of that stipulation, intervenors paid decedent's gift tax liability.

## Respondent's Final Report of Estate Tax Examination Changes

Respondent's final Form 1273, Report of Estate Tax Examination Changes, dated October 8, 2014, determined estate tax of $220,726 on a taxable estate of $494,716.65. The report reflects the agreed gift tax liability resulting from decedent's 2002 gifts to intervenors, excludes from decedent's gross estate the $200,000 potential claim reported as an asset on decedent's estate tax return, and increases the deduction allowed for decedent's debts by $105,928.35, an amount the report describes as "2002 gift tax deficiency plus interet [sic]". The estate tax deficiency of $220,726 reduces the marital deduction that respondent would allow to $1,054,362.77.

## Discussion

I.    Summary Adjudication

Summary judgment expedites litigation.  It is intended to avoid unnecessary and expensive trials.  It is not, however, a substitute for trial and should not be used to resolve genuine disputes over issues of material fact.  E.g., RERI Holdings I, LLC v. Commissioner, 143 T.C. 41, 46-47 (2014).  The moving party has the burden of showing the absence of a genuine dispute as to any material fact.  E.g., George v. Commissioner, 139 T.C. 508, 512 (2012).  For these purposes, we afford the party opposing the motion the benefit of all reasonable doubt, and we view the material submitted by both sides in the light most favorable to the opposing party.  That is, we resolve all doubts as to the existence of an issue of material fact against the movant.  E.g., Anderson v. Commissioner, T.C. Memo. 2012-46, 2012 WL 555406, at *2.

II.   Deductibility of Gift Tax

A.    Applicable Law

Section 2001(a) imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States."  Section 2051 provides that the value of the taxable estate is determined by subtracting allowable deductions from the value of the gross estate.

Since the enactment of the estate tax in 1916, Congress has adopted various measures to deter taxpayers from using lifetime gifts to avoid the tax. In 1976, Congress essentially combined the Federal estate and gift taxes into an integrated transfer tax regime and thereby eliminated much of the potential for transfer tax savings through the use of lifetime gifts instead of testamentary transfers. Even after 1976, however, taxpayers can still reduce their total transfer tax liability by making gifts. Lifetime gifts, for example, allow donors to take advantage of the annual exclusion from gift tax provided in section 2503(b), which exempts from gift tax the first $10,000 given by a donor in any year to each donee. In addition, the estate tax applies to assets used to pay the tax, while the gift tax does not. (In more technical parlance, the base of the estate tax is "tax inclusive", while the base of the gift tax is "tax exclusive".) To deter taxpayers from making gifts shortly before death to exclude from their estate (and avoid transfer tax on) the property used to pay the transfer tax, Congress included in the Tax Reform Act of 1976 (TRA), Pub. L. No. 94-455, 90 Stat. 1520, a "gross-up" rule that adds to a decedent's gross estate the amount of gift tax paid on gifts made by a decedent within three years of his death. See H. Rept. No. 94-1380, at 12 (1976), 1976-3 C.B. (Vol. 3) 735, 746 ("Th[e] 'gross-up' rule will eliminate any incentive to make deathbed transfers to remove an amount equal to the gift taxes from the transfer

tax base.").  The gross-up rule now appears in section 2035(b), which provides: "The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 [sections 2501 through 2524] by the decedent or his estate on any gift made by the decedent or his spouse during the 3-year period ending on the date of the decedent's death."

Section 2053(a) allows a deduction from the gross estate for funeral and administration expenses, claims against the estate, and indebtedness in respect of property included in the decedent's gross estate.  The regulations confirm that gift taxes owed by a decedent's estate at his death are generally deductible.  See sec. 20.2053-6(d), Estate Tax Regs. ("Unpaid gift taxes on gifts made by a decedent before his death are deductible.").

When the donee of a gift agrees to pay the gift tax resulting from the gift, the full value of the property transferred by the donor to the donee is not treated as a taxable gift.  Instead, the taxable gift, determined algebraically,[2] is the difference between the total value of the property transferred and the gift tax on the "net" gift. See Estate of Armstrong v. United States, 277 F.3d 490, 495 (4th Cir. 2002); Rev. Rul. 75-72, 1975-1 C.B. 310.

---

[2]The net gift will generally equal the full value of the transferred property divided by the sum of 1 plus the applicable tax rate.

B.      The Issue

On the basis of the parties' stipulation regarding decedent's gift tax liability, $273,990 is includible in the value of decedent's gross estate under section 2035(b).  The parties disagree, however, on whether that inclusion is offset by a deduction allowable in the same amount under section 2053(a) on the ground that the gift tax liability was not paid until after decedent's death.

C.      Petitioner's Argument

Petitioner argues that the gift tax owed by decedent on his 2002 gifts and unpaid at his death is deductible under the plain terms of section 20.2053-6(d), Estate Tax Regs.  Petitioner reasons that the payment of the gift tax by intervenors rather than by the estate does not affect the estate's entitlement to the claimed deduction because "section 2502(d) imposes the obligation to pay gift tax on the donor and the obligation remains on, and is deemed owed and paid by, the donor, even in a 'net' gift setting."[3]  Petitioner also observes that, under this Court's precedents, the inclusion in a decedent's gross estate under section 2035(b) of the gift tax liability on a net gift rests on the premise that gift tax is ultimately paid by the donor, using the donee as a conduit.  See Estate of Sachs v. Commissioner, 88

---

[3]Petitioner apparently means to refer to subsec. (c), rather than (d), of sec. 2502.  Sec. 2502(c) provides:  "The [gift] tax imposed by section 2501 shall be paid by the donor."

T.C. 769, 778 (1987), aff'd in part and rev'd in part, 856 F.2d 1158 (8th Cir. 1988); Estate of Sommers v. Commissioner, at *50 n.25.

Petitioner acknowledges that allowing the deduction of the gift tax under section 2053 would "eliminate the $273,990 gift tax add-back that takes place under Code section 2035(b) on literally a dollar for dollar basis." Petitioner seeks to justify the nullification of the effect of section 2035(b) by claiming that, in Estate of Morgens v. Commissioner, 133 T.C. 402, 416 n.22 (2009), aff'd, 678 F.3d 769 (9th Cir. 2012), we accepted that net gifts allow for "[t]he removal of funds from the transfer tax base".

D.    Respondent's Argument

Respondent argues that the gift tax intervenors paid on decedent's 2002 gifts is not deductible under section 2053 because intervenors "received nothing additional from the estate" and thus "did not pay the gift tax in their capacity as beneficiaries of Dr. Sommers' estate". Respondent also claims that "the allowance of a deduction for a liability that will not reduce the net amount passing to Dr. Sommers' other heirs will subvert the purpose of section 2035."

E.    Analysis

Although allowing decedent's estate to deduct the gift tax owed at his death on his 2002 gifts to intervenors would frustrate the policy underlying section

2035(b), as respondent argues and petitioner concedes, disallowance of the deduction need not rest on policy considerations alone. Longstanding precedent establishes that a claim against an estate is deductible in computing estate tax liability only to the extent that it exceeds any right to reimbursement to which its payment would give rise. E.g., Parrott v. Commissioner, 7 B.T.A. 134 (1927), aff'd, 30 F.2d 792 (9th Cir. 1929); Estate of Hendrickson v. Commissioner, T.C. Memo. 1999-357, 1999 WL 967037.

The decedent in Parrott died owning an undivided one-half interest in property. Her brother owned the other half interest. The property was encumbered by a mortgage of $260,000 on which the decedent and her brother had been jointly and severally liable. After the decedent's death, the mortgagee proceeded against her estate for full payment of the mortgage. With court approval, the executors paid the total $260,000 due and claimed a deduction for that amount on the estate tax return they filed. The Commissioner allowed a deduction of only $130,000. The Board upheld the Commissioner's determination, noting that, when the executors paid the entire mortgage, they were subrogated to the rights of the mortgagee and could have proceeded against the decedent's brother for reimbursement of $130,000. That claim for reimbursement, the Board reasoned, was "an asset of the estate" that related back to the date of the decedent's

death. <u>Parrott v. Commissioner</u>, 7 B.T.A. at 137. Moreover, there was no evidence that the reimbursement claim was uncollectible or otherwise worth less than $130,000. The Board viewed as immaterial whether the entire liability of $260,000 was deducted and an offsetting asset of $130,000 included in the gross estate or whether, as under the Commissioner's determination, a deduction was allowed only for the net amount.

In <u>Estate of Hendrickson</u>, we affirmed the principle adopted in <u>Parrott</u> by disallowing the deduction of any portion of a mortgage for which the decedent had been jointly and severally liable along with other family members. We reasoned that the allowable deduction had to reflect the right of contribution the decedent would have had if she had paid more than her allocable share of the mortgage. The estate, however, had failed to establish the value of those contribution rights, and the record was insufficient for us to make that determination on our own. As we explained:

> The purpose of the deduction for unpaid mortgages (and generally for claims against the estate) is to ensure that the estate tax is imposed on the <u>net</u> amount of wealth a decedent can transmit to his or her heirs. * * * To achieve this purpose, where a decedent was jointly and severally liable for a debt at the time of death, the decedent's estate is not allowed to deduct the entire debt; instead, the estate's section 2053 deduction is adjusted to take account of the decedent's right of contribution from his co-obligors. * * * This may be done directly, by limiting the decedent's section 2053 deduction to the amount of the

joint and several debt, less the value of the decedent's contribution rights.  It may also be done indirectly, by allowing the decedent a deduction for the full amount of the debt, but by including the value of the decedent's contribution rights in the value of the gross estate.

Estate of Hendrickson v. Commissioner, 1999 WL 967037, at *26 (citing, inter alia, Parrott v. Commissioner, 7 B.T.A. at 138).[4]

The principle adopted in Parrott and affirmed in Estate of Hendrickson requires denying to the estate in the present case any deduction for the gift tax owed at decedent's death on his 2002 gifts to intervenors.  Because intervenors agreed to pay any gift tax arising from those gifts, the estate's payment of that tax would have given rise to a right of reimbursement from intervenors that must be taken into account in determining decedent's taxable estate--either as a separate

---

[4]In 2009, the Secretary amended the regulations to require the "direct" approach under which any right to reimbursement reduces the allowable deduction.  Sec. 20.2053-4(d)(3), Estate Tax Regs., provides:

> If the decedent or the decedent's estate is one of two or more parties against whom the claim is being asserted, the estate may deduct only the portion of the total claim due from and paid by the estate, reduced by the total of any reimbursement received from another party, insurance, or otherwise.  The estate's deductible portion also will be reduced by the contribution or other amount the estate could have collected from another party or an insurer but which the estate declines or fails to attempt to collect.

Sec. 20.2053-4, Estate Tax Regs., as amended by T.D. 9468, 2009-44 I.R.B. 570, "applies to the estates of decedents dying on or after October 20, 2009."  Sec. 20.2053-4(f), Estate Tax Regs.

asset or as a reduction in the amount that would otherwise have been deductible under section 2053(a)(3) as a claim against the estate. Because the estate would have been entitled to reimbursement of the full amount of the gift tax paid, no deduction can be allowed. That the right to reimbursement would have arisen by contract rather than by subrogation under the terms of the debt itself does not distinguish Parrott or Estate of Hendrickson. Those cases stand for the general principle that an estate is entitled to deduct a claim under section 2053(a)(3) only to the extent that the amount owed exceeds any right to reimbursement to which payment of the claim would give rise.

Contrary to petitioner's argument, denying a deduction for the estate's gift tax liability does not conflict with the rationale for including the gift tax in the value of decedent's gross estate under section 2035(b). In Estate of Sachs, we held that then section 2035(c) (which set forth the gross-up rule that now appears in subsection (b)) required inclusion in the value of a decedent's gross estate of gift tax paid within three years of his death by the donees. In reaching that conclusion, we had to negotiate the statutory language that limits the inclusion to gift tax paid "by the decedent or his estate." We recognized that applying section 2035(c) in accordance with its plain terms would produce a result "wholly inconsistent" with Congress' intent. Estate of Sachs v. Commissioner, 88 T.C. at 777. We relied on

substance over form principles to reconcile our enforcement of the statute's underlying policy with its plain terms. Although the donees of the "net" gift directly paid the gift tax, the donor was the ultimate payor: The donees served merely as conduits. We reasoned that the donor of a net gift "may be deemed to have paid the tax by ordering the donee to pay it over to the Internal Revenue Service on his behalf in satisfaction of his gift tax liability." Id. at 778. We surmised that the drafters of the statutory rule included the qualifying phrase "paid * * * by the decedent or his estate" "to accommodate split gifts under section 2513." Id. Section 2513 allows a married couple to elect to treat a gift made by one spouse as having been made in equal shares by each spouse.[5] In Estate of Sachs, we quoted the legislative history of the gross-up rule indicating that that rule would not apply to gift tax paid by a spouse on a gift made by a decedent within three years of death if the gift were covered by a split-gift election. To the extent that, as a result of such an election, the decedent's spouse paid the gift tax on the decedent's gift, the gift tax would not reduce the decedent's estate, so the gross-up would be unnecessary. Thus, we observed, the possibility of split gift

_____

[5]Congress enacted the predecessor of sec. 2513 in 1948, along with the initial estate tax marital deduction, as part of a broader effort to equalize the tax treatment of couples residing in common law and community property States. S. Rept. No. 80-1013 (1948), 1948-1 C.B. 285, 301-306; H.R. Rept. No. 80-1274, 1948-1 C.B. 241, 257-261.

elections illustrated that "payment of tax on gifts described in section 2035(a) [that is, those made by a decedent within three years of death] does not always remove funds from the transfer tax base." Id. Given our surmise about the purpose of the qualifying language limiting the inclusion to gift tax paid "by the decedent or his estate", we did not view the language as indicating "that Congress * * * intend[ed] to distinguish net deathbed gifts from other deathbed gifts." Id.

The key question when considering the deductibility under section 2053(a)(3) of gift tax owed on a net gift, as opposed to inclusion of that amount in a decedent's gross estate under section 2035(b), is not whether the decedent (or his estate) served as the ultimate source of the funds used to pay the liability but when the decedent parted with that value. Decedent in the present case effectively provided intervenors with the wherewithal to pay tax on the taxable gifts because for each intervenor the portion of the value of the units transferred in 2002 that was ultimately determined to constitute a taxable gift was less than the total value of those units by the amount of the gift tax. But decedent made those transfers to intervenors before he died, withdrawing from his potential estate not only the value of the taxable gifts but also the amount of the tax on the gifts. Whether intervenors, as conduits for the payment of the gift tax, remitted the tax to respondent before or after decedent's death should be of no consequence to the

allowance of a deduction by the estate. As noted above, if decedent's estate had paid the gift tax liability after his death--effectively for a second time--it would have had a claim for reimbursement against intervenors, to whom decedent had already provided the wherewithal to pay the tax. Recognizing decedent as the ultimate source of the funds used to pay the gift tax does not justify allowing a deduction for the gift tax in the present case any more than in the case of a "gross" gift for which the decedent paid the gift tax before he died.

Enforcement of the purposes of the section 2035(b) gross-up rule provides further support for a conclusion that can be firmly grounded in applicable legal precedent. Petitioner acknowledges that the deduction he seeks would neutralize the impact of section 2035(b). If we were to allow the claimed deduction, the excess of the value of the units decedent transferred to intervenors in 2002 over the value of the taxable gifts (that is, the excess of the "gross" transfers over "net" gifts) would escape transfer tax altogether. The total transfer tax attendant to the transfer of decedent's property would end up being less than if decedent had retained the units until death and made testamentary transfers to intervenors.

Petitioner makes no effort to square the result he seeks with the purpose underlying section 2035(b). Instead, he seems to recognize the concerns raised by an interpretation of section 2053(a)(3) that would effectively render the gross-up

rule of section 2035(b) elective--avoidable by the simple expedient of paying gift tax not to the Internal Revenue Service (Service) but instead to the donees, to enable them to remit the tax. Unable to justify that result on policy grounds, petitioner suggests that it betrays a flaw in the statute--specifically, that the plain terms of section 2053 prevent the effective operation of section 2035(b) in cases involving net gifts. Petitioner claims that we resigned ourselves in Estate of Morgens to the prospect that net gifts allow for the avoidance of transfer taxes. That case, however, does not support creating a loophole so large that it would render section 2035(b) essentially elective. In claiming otherwise, petitioner has seized on and read out of context a single sentence from a footnote in our Opinion in Estate of Morgens.

Estate of Morgens dealt not with a net gift but instead a surviving spouse's gift of qualified terminable interest property (QTIP). The QTIP rules allow specified terminable interest property transferred by a decedent to a spouse to qualify for the marital deduction allowed by section 2056(a). In general, section 2056(a) allows a deduction for the value of any interest in property included in the decedent's gross estate "which passes or has passed from the decedent to his surviving spouse". As previously noted, Congress first provided for a marital deduction in 1948 as part of a program to reduce the disparate tax impacts on

couples residing in common law and community property States. Consistent with that objective, the marital deduction was originally limited to one-half of the decedent's adjusted gross estate. Congress removed that limitation in 1981. Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, sec. 403(a)(1)(A), 95 Stat. at 301. Thus, in its current form the marital deduction goes beyond harmonizing the treatment of couples living in common law and community property States. Instead, the unlimited marital deduction now allowed treats a married couple as a single economic unit and defers transfer tax until property is transferred outside that unit. S. Rept. No. 97-144, at 127 (1981), 1981-2 C.B. 412, 461. Thus, property transferred from the first spouse to die to the surviving spouse is generally exempt from estate tax. But that exemption is premised on the expectation that the property will be subject to estate tax on the death of the second spouse (unless consumed during her life or transferred by gift and thus subject to gift tax). Therefore, a terminable interest such as a life estate generally does not qualify for the marital deduction because it will not be included in the surviving spouse's estate. See sec. 2056(b)(1). The QTIP rules provide an election under which a qualifying terminable interest can be covered by the marital deduction at the death of the first spouse with the proviso that the underlying property be included in the estate of the second spouse upon death. See secs.

2056(b)(7), 2044.  In effect, the rules employ a fiction that treats the second spouse as owning the subject property outright, rather than owning merely a life or other terminable interest.  Consistent with this fiction, if the surviving spouse makes a gift of the QTIP during life, the entire property is subject to gift tax.  See sec. 2519(a).  Because the gift tax will apply to the full value of the property even though the donor's term interest may be worth only a small fraction of that value, section 2207A(b) allows the donor to recover the gift tax from the donees.

The decedent in Estate of Morgens made a gift of QTIP less than three years before her death.  At issue was whether the gross-up rule of section 2035(b) required the inclusion of the gift tax in her gross estate notwithstanding her entitlement to reimbursement from the donees.  In concluding that it did, we analogized the deemed transfer of QTIP to a net gift.  In each case, we reasoned, the donor is legally obligated to pay the gift tax despite having a right to reimbursement (by either contract or statute).  Thus, we concluded that the reasoning of Estate of Sachs regarding a net gift applies equally to a deemed gift of QTIP under section 2519(a).  Estate of Morgens, like Estate of Sachs, thus ultimately rests on fealty to the purpose of section 2035(b)--ensuring that gifts made within three years of death do not allow for a reduction of transfer tax.

Consequently, we should be reluctant to accept any reading of Estate of Morgens that would justify frustration of that purpose.

The footnote in Estate of Morgens on which petitioner relies refers to the comparison of split gifts and net gifts that we made in Estate of Sachs. The footnote appears at the end of a paragraph that elaborates on the purpose of section 2035(b), quoting from the report of the House Ways and Means Committee on the bill that became the Tax Reform Act of 1976. The footnote quotes further from that report: "The amount of gift tax subject to * * * [section 2035(b)] would include tax paid by the decedent or his estate * * *. It would not, however, include any gift tax paid by the spouse on a gift made by the decedent within 3 years of death which is treated as made one-half by the spouse, since the spouse's payment of such tax would not reduce the decedent's estate at the time of death." Estate of Morgens v. Commissioner, 133 T.C. at 416 n.22 (quoting H. Rept. 94-1380, supra at 14, 1976-3 C.B. (Vol. 3) at 748). Following that quotation, we added: "As we explained in Estate of Sachs v. Commissioner * * * payment of tax on gifts does not always remove funds from the transfer tax base, and the language of section 2035(b) accommodates split gifts. The removal of funds from the transfer tax base occurs, however, in net gifts." Id.

Read in context, our passing acknowledgment in <u>Estate of Morgens</u> that net gifts remove funds from the transfer tax base simply describes the reality that the excess of the value of the property transferred in a net gift over the taxable gift reduces the value of the donor's gross estate but is also excluded from the taxable portion of the gift. Consequently, that excess value (the gift tax on the net gift) would escape transfer tax altogether were it not subject to the section 2035(b) gross-up. Because a net gift depletes the donor's estate beyond the value taken into account for gift tax purposes, the gross-up is necessary. Our acknowledgment that a net gift made within three years of the donor's death effects a removal of funds from the transfer tax base that must be redressed by the gross-up cannot be read as acquiescence in the permanent exemption from transfer tax that would result if the gross-up were offset by a deduction of the same amount under section 2053(a)(3).

F.    Conclusion

For the reasons explained above, we will deny petitioner's motion for partial summary judgment that the gift tax owed at decedent's death on his gifts to intervenors is deductible under section 2053(a).

III.    The Impact of Debts and Expenses on the Estate's Marital Deduction

    A.    Applicable Law

As noted above, section 2056(a) allows a deduction for "the value of any interest in property which passes or has passed from the decedent to his surviving spouse".  The regulations clarify that "value", for that purpose, means "net value". Sec. 20.2056(b)-4(a), Estate Tax Regs.  Thus, property that would otherwise have been distributed to the surviving spouse that is used to satisfy debts of the estate is not included in the allowable marital deduction.  Similarly, any debt or claim that encumbers property that the spouse does receive reduces the deduction.  See sec. 2056(b)(4)(B).  In addition, "[f]or purposes of determining the marital deduction, the value of the marital share shall be reduced by the amount of the estate transmission expenses paid from the marital share."  Sec. 20.2056(b)-4(d)(2), Estate Tax Regs.  Transmission expenses are those "that would not have been incurred but for the decedent's death and the consequent necessity of collecting the decedent's assets, paying the decedent's debts and death taxes, and distributing the decedent's property to those who are entitled to receive it."  Sec. 20.2056-4(d)(1)(ii), Estate Tax Regs.

Even when marital assets would otherwise be exempt from debts and expenses under State law or the terms of the decedent's will, executors may be

forced to sell those assets to satisfy debts and or pay expenses if nonmarital assets are insufficient. See, e.g., Martin v. United States, 923 F.2d 504, 506 (7th Cir. 1991); Murray v. United States, 687 F.2d 386, 391-392 (Ct. Cl. 1982). In such cases, the marital deduction must be reduced by the value of the marital assets used to pay debts or expenses. See Martin, 923 F.2d at 506; Murray, 687 F.2d at 391-392; sec. 20.2056(b)-4(c)(1), Estate Tax Regs.

The deduction allowed to an estate under section 2053(a) for expenses and claims generally cannot "exceed the value, at the time of the decedent's death, of property subject to claims". See sec. 2053(c)(2). Claims and expenses paid from property not subject to claims are nonetheless deductible, however, when paid before the due date of the estate tax return. Id. For purposes of section 2053(c)(2), "the term 'property subject to claims' means property includible in the gross estate of the decedent which, or the avails of which, would under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate". Id.

B.    The Parties' Arguments

Petitioner claims that decedent's estate is entitled to a marital deduction of $1,698,392.24, equal to the value of decedent's nonprobate property that Bernice received or to which she succeeded that, under New Jersey law, was exempt from

the estate's debts and expenses. Petitioner argues that those assets "are protected from claims including state law debts of the decedent and the expenses of administering the decedent's estate, to the extent such expenses arise under state law." See N.J. Stat. Ann. sec. 46:3-17.4 (West 2014) ("Neither spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during marriage or upon separation without the written consent of both spouses."); id. sec. 46:3-17.5 ("Upon the death of either spouse, the surviving spouse shall be deemed to have owned the whole of all rights under the original instrument of purchase, conveyance, or transfer from its inception."); id. sec. 17B:24-6(a) (West 2006) ("If a policy of insurance * * * is affected by any person on his own life * * * in favor of a person other than himself, * * * then the lawful beneficiary * * * shall be entitled to its proceeds and avails against the creditors and representatives of the insured[.]"); id. sec. 17B:24-7(a) (providing as a general rule that "[t]he benefits * * * which under any annuity contract * * * are due or prospectively due the annuitant, shall not be subject to execution, garnishment, attachment, sequestration or other legal process"). According to petitioner, all of the debts and expenses for which the estate claimed deductions on its estate tax return "arise under New Jersey state law, and accordingly are bound by and are

subject to the limitations and exemptions set forth in the New Jersey statutes" on which petitioner relies.

In opposing petitioner's marital deduction motion, respondent observes that "the marital share [of decedent's estate] holds the only assets available to pay" the debts and expenses for which the estate claimed deductions. Therefore, respondent argues, those debts and expenses must reduce the marital deduction to which the estate is entitled.

C.    Analysis

Petitioner's claim of a marital deduction of $1,698,392.24 is inconsistent with the estate's deduction of $413,459.86 of debts and expenses. The $3,744,477.63 gross estate reported on decedent's estate tax return included a lifetime transfer of $507.34 and artwork valued at $1,750,000 that we have concluded had been transferred by decedent to intervenors in valid, inter vivos gifts. Estate of Sommers v. Commissioner, at *46. If petitioner is correct that Bernice received or succeeded to nonprobate assets worth $1,698,392.24 that were exempt, under New Jersey law, from claims against the estate, then the date-of-death value of the property subject to claims was no more than $295,578.05

($3,744,477.63 – $507.34 – $1,750,000 – $1,698,392.24).[6] The debts and expenses reported by the estate would be fully deductible only if at least $117,881.81 of them ($413,459.86 – $295,578.05)--and perhaps as much as $317,881.81 ($413,459.86 – $95,578.05)--were voluntarily paid before the due date of the estate tax return out of assets that were exempt from claims against the estate. See sec. 2053(c)(2). To the extent that Bernice voluntarily paid debts or expenses of the estate out of property that was exempt from claims against the estate, the estate's allowable marital deduction would be reduced below the amount to which petitioner claims to be entitled. See Martin, 923 F.2d at 506; Murray, 687 F.2d at 391-392; sec. 20.2056(b)-4(d)(2), Estate Tax Regs. In short, either the allowable marital deduction is less than $1,698,392.24 or the estate is not entitled to deduct in full the debts and expenses reported on the estate tax return.[7]

---

[6]If, as indicated by respondent's final Form 1273, the $200,000 potential claim against a trust of which decedent was the beneficiary and a cotrustee that the estate reported as an asset has proved to have no merit or value, the date-of-death value of the estate property subject to claims would have been only $95,578.05 ($295,578.05 – $200,000.00).

[7]Respondent made no adjustment in the notice of deficiency to the deductions claimed by the estate under sec. 2053(a). Although his final Form 1273 increased the deduction allowed for decedent's debts by an amount described as "2002 gift tax deficiency plus interet [sic]", that description is obviously

(continued...)

D.    Conclusion

Because the estate's entitlement to a marital deduction in the amount petitioner claims turns on the factual question of the extent to which assets otherwise exempt from claims against the estate were used to pay the reported debts and expenses, we will deny petitioner's motion asking us to determine a marital deduction in that amount.

---

[7](...continued) incorrect because the $105,928.25 adjustment is less than the $273,990 stipulated gift tax deficiency. We assume, therefore, that the adjustment includes only interest. In any event, respondent now claims that neither the gift tax deficiency nor the interest on that amount is deductible under sec. 2053(a).

Normally, respondent's pursuit of an adjustment not made in the notice of deficiency requires him to amend his answer and bear the burden of proof in regard to the newly asserted issue. See Rules 36(b), 41(a), 142(a)(1). Here, however, any decrease in the deduction allowed to the estate for debts and expenses by reason of the limitation imposed by sec. 2053(c)(2) may simply be an arithmetic corollary of the adjustment made in the notice of deficiency to exclude from decedent's estate the $1,750,000 of artwork that decedent transferred by gift to intervenors before his death. Respondent's failure heretofore to consider any reduction in the deduction allowable for debts and expenses by reason of sec. 2053(c)(2) may reflect unawareness of the extent to which assets that Bernice received or to which she succeeded were exempt from claims against the estate.

IV.     Apportionment of Estate Tax

    A.     Applicable Law

        1.     The Development of State Apportionment Statutes

Although the Code imposes liability for the Federal estate tax, in the first

instance, on the executor, sec. 2002, it also provides the Service with a broad array

of powers to collect the tax, when necessary, from those who received the

decedent's assets.  For example, section 6324(a)(1) imposes a 10-year lien on all

property included in the decedent's gross estate (including property received by the

decedent's surviving spouse and covered by the marital deduction).  In addition, if

the estate tax is not paid when due, any person who received, or held at the

decedent's death, property not owned by the decedent but included in his estate

under sections 2034 to 2042 is personally liable for the estate tax to the extent of

the value of that property on the decedent's death.  Sec. 6324(a)(2).[8]

The choices made by the Service in exercising its discretion regarding the

collection of the estate tax, however, generally do not determine the ultimate

_____

    [8]Moreover, for purposes of sec. 6324, property transferred by the decedent
within three years of his death is treated as having been included in his gross
estate.  Sec. 2035(c)(1).  Consequently, if respondent is unable to collect from
petitioner any estate tax deficiency determined in this case, he could proceed
against intervenors for payment of the tax.  See Armstrong v. Commissioner, 114
T.C. 94 (2000).

economic incidence of the tax. In <u>Riggs v. Del Drago</u>, 317 U.S. 95, 97-98 (1942), the Supreme Court, in upholding the constitutionality of a New York estate tax apportionment statute, held that "the ultimate impact of the federal [estate] tax" should be governed by "applicable state law". Those from whom the Service collects estate tax in excess of their allocable share, as determined by applicable State law, are generally entitled to reimbursement from other recipients of the decedent's property. <u>See</u> sec. 2205; sec. 20.2205-1, Estate Tax Regs.; <u>see also, e.g.</u>, N.J. Stat. Ann. sec. 3B:24-8 (West 1983) (allowing court to direct reimbursement to transferee from estate if transferee was required to pay more than proportionate share of tax).

At common law, the estate tax was generally payable out of the estate's residue. <u>E.g.</u>, <u>Turner v. Cole</u>, 179 A. 113, 114 (N.J. 1935) ("The federal estate tax falls upon the residuary estate[.]"). The common law rule caused increasing inequities as more assets were transferred outside of probate, by means of trusts or joint ownership. The burden of the estate tax, which was generally imposed on both probate and nonprobate assets, was borne disproportionately by those beneficiaries who received testamentary transfers out of the residuary probate estate. To address those perceived inequities, States began adopting statutory apportionment regimes like the one upheld by the Supreme Court in <u>Riggs</u>. The

apportionment statutes generally provide, in the absence of a contrary direction from the testator, for ratable allocation of the estate tax among all nonexempt recipients of property by reason of the testator's death.

New Jersey adopted its apportionment statue in 1950. 1950 N.J. Laws 1096. As the New Jersey Supreme Court explained in Hale v. Leeds, 146 A.2d 216, 221 (N.J. 1958): "The New Jersey Apportionment Statute was enacted to correct what was deemed to be the inequities of the common law rule, i.e., in the absence of a clear contra intent on the part of the testator, the residuary estate was to bear the burden of federal estate and state inheritance taxes imposed against the decedent's taxable estate."

The National Conference of Commissioners on Uniform State Laws (NCCUSL) adopted the first Uniform Estate Tax Apportionment Act (Uniform Act) in 1958. The 1958 Uniform Act was replaced by revised versions in 1964 and 2003.

The initial apportionment statutes did not explicitly address the possibility that the value of property not includible in the decedent's gross estate could nonetheless influence the amount of estate tax liability. When those statutes were first enacted, that possibility did not arise, at least under the Federal estate tax law. Under Federal law, before 1976, lifetime gifts made by a decedent could affect his

Federal estate tax liability only if made in contemplation of death, in which case the transferred property was included in the decedent's gross estate. See sec. 2035(a) (before amendment by TRA sec. 2001(a)(5), 90 Stat. at 1848). That changed, however, with the TRA and its overhaul of the Federal transfer tax regime, which, as noted above, essentially combined the estate and gift taxes into an integrated tax.

Since 1976, the Federal estate and gift taxes are computed by reference to a single graduated rate schedule applied on a cumulative basis. Thus, in computing the gift tax due for any given year, a taxpayer first computes a "tentative tax" on all lifetime gifts. Sec. 2502(a)(1). The taxpayer then subtracts from that tax a tentative tax on only prior years' gifts. Sec. 2502(a)(2). That excess is further reduced by a lifetime "unified credit" that exempts from tax gifts and lifetime transfers up to a specified amount. See sec. 2505(a). Thus, gifts made in prior years serve to push current year gifts further up the graduated rate scale. Upon the taxpayer's death, his estate tax liability is computed in a similar manner. First, a tentative tax is computed on the sum of "adjusted taxable gifts" and the decedent's taxable estate. Sec. 2001(b)(1). (For that purpose, the decedent's adjusted taxable gifts include the total amount of taxable gifts made after 1976 other than gifts includible in his gross estate. Sec. 2001(b) (flush language).) The tentative tax

described by section 2001(b)(1) is reduced by both a hypothetical tax on post-1976 gifts (determined using the rate schedule in effect at the decedent's death) and the unified credit. Secs. 2001(b)(2), 2010.

Thus, under the post-1976 integrated transfer tax regime, lifetime gifts can increase a donor's estate tax liability even if the transferred property is not included in the value of his gross estate. For example, lifetime gifts may absorb the unified credit and leave less available to shelter from estate tax the assets passing at death. Additional lifetime gifts beyond those sufficient to absorb the unified credit push the estate into higher marginal tax brackets. And, of course, while gifts are no longer included in a decedent's gross estate, regardless of their nexus to the decedent's death in either motivation or temporal proximity, the gift tax paid on gifts made within three years of death is included in the value of the gross estate by section 2035(b).

In a few jurisdictions in which legislators did not update their State's apportionment statutes to reflect the 1976 changes in the Federal transfer tax regime, courts have approved apportionment of estate tax to recipients of lifetime gifts, without clear statutory mandate, apparently to remedy perceived inequities. See Bunting v. Bunting, 760 A.2d 989 (Conn. App. Ct. 2000); Shepter v. Johns Hopkins Univ., 637 A.2d 1223 (Md. 1993); In re Estate of Necaise, 915 So. 2d

449 (Miss. 2005). By contrast, New York courts applied that State's apportionment statute more narrowly and declined to apportion estate tax to donees. See In re Metzler, 579 N.Y.S.2d 288, 290 (App. Div. 1992); In re Estate of Coven, 559 N.Y.S.2d 798 (Surr. Ct. 1990). The New Jersey courts have yet to address the extent to which their State's statute provides for apportionment of estate tax to recipients of lifetime gifts.

### 2. The New Jersey Apportionment Statute

The New Jersey apportionment statute applies "[w]henever a fiduciary has paid or may be required to pay an estate tax under any law of the State of New Jersey or of the United States upon or with respect to any property required to be included in the gross tax estate of a decedent under the provisions of any law". N.J. Stat. Ann. sec. 3B:24-2 (West 1983). In such cases, the amount of tax must "be apportioned among the fiduciary and each of the transferees interested in the gross tax estate" in accordance with the apportionment statute unless the testator "otherwise directs in his will" or provides in a "nontestamentary instrument" for a different apportionment of the taxes upon the fund dealt with in that instrument. Id. The term "transferee" means "any person to whom the gross estate or any part thereof is, or may be, transferred or to whom any benefit therein accrues other than that part of the gross estate that passes under the will of decedent". Id. sec. 3B:24-

1(d).  Because those who receive property passing under the decedent's will are not "transferees" for purposes of the apportionment statute, the estate tax attributable to specific testamentary bequests is, in the absence of a contrary direction by the testator, apportioned to the fiduciary and borne by the residuary beneficiaries of his estate.  See id. sec. 3B:24-2 ("Nothing in this chapter shall be taken to require an apportionment of an estate tax inter sese among the devisees and beneficiaries under a will[.]"); see also Nat'l State Bank of Newark v. Nadeau, 153 A.2d 854, 859 (N.J. Super. Ct. App. Div. 1959) ("[U]nder New Jersey law, there is no apportionment of federal estate taxes as to property passing under a will[.]"); In re Estate of Burnett, 142 A.2d 695, 699 (N.J. Cty. Ct. 1958) ("[T]he New Jersey apportionment statute * * * deals only with the apportionment of the estate tax as between a fiduciary and a transferee of non-probate assets and does not guide the apportionment of the estate tax among beneficiaries.").

N.J. Stat. Ann. sec. 3B:24-4 provides the basic mechanics for apportioning estate tax to transferees of nonprobate property.  That section provides:  "In the absence of directions to the contrary:  (a) That part of the tax shall be apportioned to each of the transferees as bears the same ratio to the total tax as the ratio which each of the transferees' property included in the gross tax estate bears to the total property entering into the net estate for purposes of that tax".  The "gross tax

estate" means "all property of every description required to be included in computing the tax".  Id. sec. 3B:24-1(b).  "[T]he balance of the tax", after apportionment as required among transferees, is "apportioned to the fiduciary".  Id. sec. 3B:24-4(a).  Finally, N.J. Stat. Ann. sec. 3B:24-4(b) provides:  "Any deduction allowed under the law imposing the tax by reason of the relationship of any transferee to the decedent or by reason of the charitable purposes of the gift shall inure to the benefit of the fiduciary or transferee, as the case may be, subject nonetheless to the provisions of N.J.S. 3B:24-3 [dealing with term interests]".

B.    The Issue

Given the terms of the New Jersey apportionment statute, the issue in the present case of whether any or all of the estate tax owed by decedent's estate can be apportioned to intervenors turns on whether the units transferred to them were "included in computing the tax", making them "transferees" within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d).[9]

_____

[9]The parties apparently accept that decedent's will included no "directions to the contrary" that would override the apportionment of estate tax prescribed by the statute, agreeing that the testamentary directive to pay all debts out of the residuary estate is not sufficiently specific to cover the apportionment of estate taxes.  In general, courts have divided over the question of whether a general provision regarding the payment of debts constitutes a direction regarding the apportionment of estate taxes sufficient to override any applicable apportionment statute.  Douglas A. Kahn, "The 2003 Revised Uniform Estate Tax Apportionment

(continued...)

C.     The Parties' Arguments

Petitioner offers two arguments in support of the view that decedent's gifts to intervenors were part of his "gross tax estate", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(b).  First, petitioner claims that, because those gifts were included in decedent's "adjusted taxable gifts", within the meaning of section 2001(b), they were "required to be included in computing" decedent's estate tax liability.  That argument, if accepted, would support apportionment of estate tax to any recipient of a gift from a decedent made after 1976 of property not included in the decedent's gross estate.  Petitioner acknowledges that "New Jersey courts have not had occasion to issue an opinion dealing with the precise situation of a gift-tax add back now before this Court".  Petitioner finds analogous support, however,

---

[9](...continued)
Act", 38 Real Prop. Prob. & Tr. J. 613, 619 (2004).  In any event, under New Jersey law, any direction regarding apportionment provided in a decedent's will is effective only in regard to recipients of property transferred under the will.  N.J. Stat. Ann. sec. 3B:24-5 (West 1983) ("Any direction as to apportionment or nonapportionment of the tax, whether contained in a will or in a nontestatmentary instrument, shall be limited in its operation to the property passing thereunder unless the will or instrument otherwise directs.").  Therefore, even if decedent's will were read to provide for the payment of estate tax out of the residuary of his estate, that direction would not govern the apportionment of tax attributable to the sec. 2035(b) inclusion resulting from the gifts that decedent made to intervenors. (Moreover, such a direction would have been superfluous, resulting in the same apportionment of estate tax that would otherwise have been provided under the statute.)

from the "several courts" that, in applying "similar apportionment regimes, have directed that lifetime transferees, whose 'adjusted taxable gifts' gave rise to an estate tax, must be apportioned the resulting tax". In that regard, petitioner cites Bunting, Shepter, and Necaise.

Petitioner also offers a second argument that applies only to gifts made by a decedent within three years of death on the condition of the donees' agreement to pay the resulting gift tax. As noted supra part II.A, when the donee agrees to pay the gift tax, the full value of the property transferred from the donor to the donee is not treated as a taxable gift. Instead, the taxable gift, determined algebraically, is the difference between the total value of the transferred property and the gift tax on the "net" gift. Petitioner argues that a portion of the property intervenors received "represent[ed] the gift tax that was added back to * * * [decedent's] estate". Therefore, according to petitioner, intervenors "clearly received a portion of 'the gross tax estate [i.e., at least the portion of the gift that enabled them to pay the gift tax].'"

In his response to petitioner's motion, respondent agrees that "the estate tax is apportioned to * * * [intervenors] under New Jersey law, [so that] the estate tax does not reduce the marital share". Respondent reasons that intervenors are

"transferees", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d), because they "are persons to whom a benefit in the gross tax estate accrues."[10]

Intervenors oppose petitioner's motion regarding apportionment of the estate tax and ask for partial summary judgment in their favor on the ground that "the estate tax at issue cannot be apportioned to * * * [them]". They argue that "Gift Tax Clawbacks are not 'transferees' property' within the meaning of the Apportionment Statute", so that "the estate cannot apportion" the estate tax liability at issue.

Intervenors also argue that apportioning any of the estate tax liability to them would be inconsistent with decedent's intent. That intent, intervenors argue, was embodied in decedent's agreement with each of them under which the only liability she agreed to bear was the gift tax on the 2002 transfer of units to her. Thus, as we understand intervenors' alternative argument, they claim that the 2002 gift and acceptance agreement that decedent entered into with each of them is a "nontestatmentary instrument", within the meaning of N.J. Stat. Ann. sec. 3B:24-2,

---

[10]Respondent's position in response to petitioner's motion appears to conflict with his final Form 1273, which reduced the marital deduction by the estate tax deficiency determined in the report. If respondent were correct that the estate tax deficiency does not reduce the allowable marital deduction, decedent's taxable estate would be $274,497.34 ($273,990 gross-up under sec. 2035(b) plus the lifetime transfer of $507.34), rather than the $494,716.65 determined in respondent's final report.

that directs that no estate tax be apportioned against units each intervenor received under the terms of that agreement. None of the 2002 gift and acceptance agreements, however, refers to the apportionment of any Federal estate tax liability resulting from the gifts. In each, the donee "agrees to pay the gift taxes, if any, relating to the gift [of] the units". But the agreements do not specifically disclaim the donees' liability for any other taxes. Intervenors apparently ask us to rule that, because the only taxes they agreed to pay under the 2002 gift agreements were gift taxes, those agreements implicitly provide that they are not liable for estate taxes.

Intervenors do not explicitly address petitioner's first argument, that adjusted taxable gifts are part of the gross tax estate, within the meaning of N.J. Stat. Ann. sec. 3B:24-1(b), because they are "included in" the computation of estate tax liability. Intervenors do, however, question the relevance of the caselaw petitioner cites from jurisdictions other than New Jersey in support of that argument. In particular, they observe that Shepter was legislatively overruled, and they attempt to distinguish Bunting and Necaise on the ground that those cases did not involve inclusions of gift tax under section 2035(b).

D.    Analysis

1.    Petitioner's First Argument

a.    Statutory Analysis

The validity of petitioner's first argument turns on whether the units intervenors received in 2002 were "included in computing" decedent's estate tax liability.  If so, the units were part of decedent's "gross tax estate", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(b), and intervenors, as recipients of those units, would be "transferees", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d), to whom estate tax could be apportioned under N.J. Stat. Ann. sec. 3B:24-4.  Petitioner argues that the units intervenors received in 2002 were "included in computing the tax" because they were part of decedent's "adjusted taxable gifts" that entered into the computation of the estate tax liability under section 2001(b)(1)(B).  If the phrase "included in" can be read as synonymous with "taken into account", the terms of the statute would support petitioner's position.  As explained below, however, both the structure of the apportionment scheme as a whole and the history of the specific provision defining "gross tax estate" suggest that the New Jersey legislature intended the phrase "included in" to limit the gross tax estate to property encompassed within the base to which the tax applies.

The separate provisions of the New Jersey apportionment statute must be interpreted consistently to maintain the coherence of the scheme it defines. The general apportionment rule provided in N.J. Stat. Ann. sec. 3B:24-4(a) (West 1983) requires each "transferee" of nonprobate assets to bear a ratable portion of the total tax and apportions the balance of the tax to the fiduciary. The numerator of the fraction that determines each transferee's proportionate share is the value of the property received by the transferee that is "included in the gross tax estate". Id. (Again, property is included in the gross tax estate if it is "required to be included in computing the tax". Id. sec. 3B:24-1(b).) And the denominator of the apportionment fraction is "the total property entering into the net estate for purposes of * * * [the] tax". Id. sec. 3B:24-4(a). Arithmetic logic suggests that any amount included in the numerator of the apportionment fraction must also be included in the denominator. Were that not the case, the sum of the numerators could, in theory, exceed the denominator, resulting in the allocation among transferees of amounts of tax in excess of the estate's total tax liability.[11] Although

_____

[11]This possibility is mostly theoretical: Because the numerators include only nonprobate property, their sum will generally be less than the "total property entering into the net estate". Nonetheless, if most of a decedent's estate consists of nonprobate property and the decedent made substantial gifts shortly before death, the construction of the statute advanced by petitioner and respondent could result

(continued...)

property taken into account in determining estate tax liability could be viewed as having been "included in computing the tax" regardless of whether it was included within the tax base, it would be difficult to view property not included in the tax base as "entering into the net estate". Property can "enter into the net estate" (presumably a reference to gross estate less allowable deductions) only if it was first part of the gross estate.[12] To the extent that property "required to be included in computing the tax" must be defined consistently with "property entering into the net estate" to preserve the arithmetic integrity of the apportionment scheme, that need for consistency would support reading the phrase "included in computing the tax" to refer to property included in the tax base. Property not included in the tax

_____

[11](...continued)
in an allocation to transferees of an amount of tax in excess of the total tax payable.

[12]On the other hand, the inclusion of property within the gross estate does not mean that it necessarily enters into the net estate. For example, property eligible for the Federal marital deduction is included in a decedent's gross estate but, by reason of the deduction, may not enter into the net estate. Exclusion of marital property from the denominator would be a corollary of N.J. Stat. Ann. sec. 3B:24-4(b), which provides as a general rule that a surviving spouse is not allocated estate tax in respect of nonprobate property to which she succeeded to the extent that that property is covered by an allowable marital deduction.

base cannot be part of the gross tax estate even if, in some other respect, it enters into the computation of the tax.[13]

The history of the definition of "gross tax estate" provided in N.J. Stat. Ann. sec. 3B:24-1(b) further supports including within that definition only property included in the base of the tax being apportioned. The definition of "gross tax estate" has remained unchanged since the initial adoption of the apportionment statute in 1950. See 1950 N.J. Laws 1096. Therefore, whatever its reasons for defining the "gross tax estate" to cover property included "in computing" the tax instead of property included in the tax base, because the New Jersey legislature adopted that definition long before the 1976 revision of the Federal transfer tax regime, the legislature cannot have intended to include within "gross tax estate" adjusted taxable gifts that serve only to increase the marginal rate applicable to a

---

[13]Despite the perhaps imprecise statement in our prior report that "the LLC units [intervenors received in 2002] are subject to the estate tax either as part of decedent's taxable estate or as part of decedent's adjusted taxable gifts", Estate of Sommers v. Commissioner, T.C. Memo. 2013-8 at *5 n.2, those units should not be viewed as encompassed within the base to which the Federal estate tax applies. Although adjusted taxable gifts, together with the taxable estate, form the base on which the "tentative tax" provided for in sec. 2001(b)(1) is computed, that tax is reduced by a hypothetical tax on post-1976 gifts. The inclusion of adjusted taxable gifts in the base to which the tentative tax applies thus serves only to push the taxable estate further up the marginal rate scale.

decedent's taxable estate.  That possibility could not have arisen in 1950 under Federal estate law or, as far as we know, under the estate tax law of any State.

Finally, an opinion of the New Jersey Supreme Court issued relatively soon after enactment of the State's apportionment statute suggests that that court understood the statute to allocate the burden of the estate tax only among those who receive property included in the tax base.  In Hale, 146 A.2d at 221, the court described the "statutory scheme" as follows:  "In the absence of a clear contrary intent, the recipients of assets properly includable in the taxable estate of a decedent under the federal or state taxing acts shall pay a share of the tax in the proportion that the assets so received have contributed to the tax liability."  While the court did not have before it the specific issue that we face, its description of the statutory scheme indicates how New Jersey's highest court understood the statute at a time roughly contemporaneously with its initial enactment.

For the reasons described above, we conclude that the better reading of the New Jersey apportionment statute would interpret its text to provide for the apportionment of Federal estate tax only to transferees who receive nonprobate property included in the decedent's gross estate.  We will now consider the likelihood that the New Jersey courts might follow the lead of those in a few other

States and, in the interest of promoting equity, require apportionment to donees of lifetime gifts not included in the decedent's gross estate.

        b.      <u>Implications of Caselaw in Jurisdictions Other Than New Jersey</u>

The decisions from Maryland, Mississippi, and Connecticut on which petitioner relies (<u>Shepter</u>, <u>Necaise</u>, and <u>Bunting</u>, respectively) did not explicitly consider petitioner's argument that gifts are "included in computing the tax". Although petitioner claims that the apportionment regimes in those States were "similar" to New Jersey's, the other States' statutes, following the 1964 Uniform Act, provided for the apportionment of estate tax to those who received property included in the decedent's taxable (or, in the case of Connecticut, gross) estate. The question of whether property not included in the decedent's gross or taxable estate was nonetheless "included" in the computation of the tax would be irrelevant under the apportionment statutes of Maryland, Mississippi, or Connecticut. <u>But see</u> <u>Shepter</u>, 637 A.2d at 1235 (noting that the Federal estate tax imposed by section 2001 is "computed by including values reported on the return as 'adjusted taxable gifts'"). That means, however, that the apportionment statutes of those States provide less of a textual basis for apportioning estate tax to recipients of lifetime gifts than does the New Jersey statute. Even though their

States' statutes were relatively less hospitable to apportioning estate tax to donees of property not included in the decedent's estate, the courts in Shepter, Necaise, and Bunting each approved such apportionment. Therefore, those cases could be relevant to petitioner's argument, despite the differences in statutory terms, in that they illustrate courts' willingness to allow the apportionment of estate tax to recipients of lifetime gifts to implement perceived equities even when that apportionment is not clearly provided for by the relevant statute. Further, we disagree with intervenors that Necaise and Bunting are irrelevant to the present case because they did not involve gross-ups under section 2035(b). We understand petitioner to be relying on Shepter, Necaise, and Bunting in support of his first argument, which would justify apportioning estate tax to any recipient of a gift included in a decedent's adjusted taxable gifts, regardless of whether the gift was made within three years of the decedent's death and thus gave rise to an inclusion of the gift tax on the gift under section 2035(b). Again, the relevant question for present purposes is whether Shepter, Necaise, and Bunting provide a basis for predicting that New Jersey courts would reject the more persuasive text-based interpretation of their State's apportionment statute to implement what they perceive to be an equitable result. We will return to that question, and consider Shepter, Necaise, and Bunting in detail, after we address the opinions of New

York courts that, in contrast to those in Maryland, Mississippi and Connecticut, specifically considered petitioner's argument that a recipient of a gift included in a decedent's "adjusted taxable gifts", within the meaning of section 2001(b), is subject to apportionment of Federal estate tax because the decedent's adjusted taxable gifts are involved in the computation of the tax.

In Estate of Coven, 559 N.Y.S.2d at 798, the New York Surrogate's Court for New York County addressed an argument by a decedent's daughter, who was one of the beneficiaries under the decedent's will, for an apportionment of estate tax to a donee who had received substantial lifetime gifts from the decedent. By statute, New York law provides for the apportionment of estate tax "among the persons interested in the gross tax estate". N.Y. Est. Powers & Trusts Law sec. 2-1.8(a) (McKinney 2012). The daughter who sought apportionment of estate tax to a donee made essentially the same argument petitioner makes here: Because adjusted taxable gifts are involved in the computation of estate tax, they are included in the "gross tax estate". The court rejected that argument, explaining that adjusted taxable gifts "are added to the tax calculation * * * in a separate step after the taxable estate has been determined." Estate of Coven, 559 N.Y.S.2d at

800.[14] The court had "no doubt" that "an inequity [had been] caused by the gross-up of the estate into a higher tax bracket as a result of the lifetime gifts." Id. Nonetheless, the court concluded that "neither the governing statute * * * nor * * * the [decedent's] will requires an apportionment of estate tax against adjusted taxable gifts." Id.

Two years later, the New York Supreme Court, Appellate Division, also considered an argument that the New York apportionment statute "should be construed to require apportionment * * * against inter vivos gifts because those gifts were included in the calculation of the estate taxes." Metzler, 579 N.Y.S.2d at 289. The appellate court reached the same conclusion as the surrogate's court in Estate of Coven, which it cited with approval. In the absence of a definition of "gross tax estate" in the New York statute, the court in Metzler looked to the relevant tax statute, which--because the tax being apportioned was the Federal estate tax-- was section 2033. That section provides: "The value of the gross estate shall include the value of all property to the extent of the interest therein of

_____

[14]Because the gifts at issue in In re Estate of Coven, 559 N.Y.S.2d 798 (Surr. Ct. 1990), were made less than three years before the decedent's death in 1982, the gift tax on those gifts was presumably included in her gross estate under then sec. 2035(c) (now sec. 2035(b)). It appears, however, that the issue of the apportionment of the estate tax on any sec. 2035(c) inclusion was not before the court.

the decedent at the time of his death." The court in <u>Metzler</u> reasoned that, because the decedent retained at her death no interest in the property she had transferred by gift the previous year, that property was not part of her "gross tax estate".[15] Thus, the court concluded that no apportionment of estate tax to the donee could be made under the New York apportionment statute.

Like the surrogate's court in <u>Estate of Coven</u>, the New York appellate court in <u>Metzler</u> acknowledged the arguable inequity of failing to apportion estate tax to the recipient of a lifetime gift. The court explained:

> This issue of tax apportionment arises from the fact that EPTL 2-1.8 antedates the passage of the Tax Reform Act of 1976 * * *. Prior to that Act, * * * taxable inter vivos gifts were not, in general, considered in the calculation of the estate tax. * * * The Legislature has not amended EPTL 2-1.8 to reflect the changes in the gift and estate tax statutes. Thus, * * * EPTL 2-1.8 allows apportionment only against the gross tax estate and, therefore, not against inter vivos gifts as well. Although it might appear that it would be more equitable to apportion the estate tax against all the assets causing the tax, EPTL 2-1.8 does not authorize such apportionment.

<u>Id.</u> at 290. The court also suggested that the failure to apportion estate tax to the recipients of lifetime gifts may not have been inequitable because, "[i]n making

---

[15]The gifts at issue in <u>In re Metzler</u>, 579 N.Y.S.2d 288 (App. Div. 1992), like those in <u>Estate of Coven</u>, were made less than three years before the decedent's death. Therefore, the gift tax on the gifts was presumably included in the decedent's estate under sec. 2035(c) even though the transferred property would not have been.

the inter vivos gifts to petitioner, the decedent implicitly intended that petitioner take those gifts free of any tax obligation."  Id.

The relevance of Metzler and Estate of Coven to the present case might be challenged on the ground that the New York apportionment statute, unlike the New Jersey statute, does not define "gross tax estate".  That distinction would matter, however, only if the phrase "included in computing the tax" in N.J. Stat. Ann. sec. 3B:24-1(b) were read to mean "taken into account in computing the tax" instead of "included in the tax base".  As explained above, however, the overall scheme of the New Jersey statute and the history of the definition of "gross tax estate" convince us that the legislature did not intend a meaning of that term that differs materially from that imputed by the New York courts in the absence of a statutory definition.

The cases on which petitioner relies interpreting the Connecticut, Maryland, and Mississippi apportionment statutes--Bunting, Shepter, and Necaise, respectively–are broadly similar.  Again, each of those cases required the apportionment of estate tax to recipients of inter vivos gifts under statutes modeled on the 1964 Uniform Act that, if anything, provide even less textual basis for such apportionment than the New Jersey statute does.

The Maryland apportionment statute requires the apportionment of estate tax "among all persons interested in the estate." Md. Code Ann., Tax-Gen. sec. 7-308(b) (LexisNexis 2016). The apportionment is to be made "in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate." Id. The statute defines "person interested in the estate" to mean "any person who is entitled to receive or has received, from a decedent while alive or by reason of the death of a decedent, any property or interest in property included in the taxable estate of the decedent." Id. sec. 7-308(a)(4).[16] The donee before the Court of Appeals of Maryland in Shepter, 637 A.2d at 1235, argued that the Maryland statute did not provide for apportionment of estate tax to him "because, under amendments to the IRC made by Congress after Maryland adopted the Uniform Act, the transfer to

---

[16]For the sake of comparison, sec. 2 of the Uniform Estate Tax Apportionment Act (Uniform Act) of 1964 provided for the apportionment of tax "among all persons interested in the estate", and sec. 1(4) of the Uniform Act defined "person interested in the estate" to mean "any person, including a personal representative, guardian, or trustee, entitled to receive, or who has received, from a decedent while alive or by reason of the death of the decedent any property or interest therein included in the decedent's taxable estate".

him is not treated as part of the 'taxable estate' * * * but it is reported on the return as an 'adjusted taxable gift'".[17]  The court responded:

> Following that change in the IRC, the National Conference of Commissioners on Uniform State Laws saw no need to amend the Uniform Act to address the change, and the General Assembly has not done so.  Nevertheless, apportionments continue to be made of the total estate tax imposed by IRC § 2001.  This practical contemporaneous construction, that has existed for seventeen years, reflects that * * * the tax imposed by IRC § 2001 * * * [is] computed by including values reported on the return as "adjusted taxable gifts" per IRC § 2001(b)(1)(B)."

Id.  Thus, the court in Shepter seemed to rely primarily on an inference drawn from legislative inaction.  Before the substantial integration of the Federal estate and gift taxes in 1976, gifts made by a decedent shortly before death would have been includible in the decedent's gross estate (assuming, that is, that they had been made in contemplation of death).  And, under the Maryland apportionment statute, the donee of a lifetime gift included in the decedent's gross estate would have borne an allocable part of the estate tax liability.  The court in Shepter seems to have inferred that the Maryland legislature (like the National Conference of Commissioners on Uniform State Laws) intended the same result to obtain after

---

[17]The gift at issue in Shepter v. Johns Hopkins Univ., 637 A.2d 1223 (Md. 1994), was made in January 1986, and the decedent died the following November. Thus, once again, although the transferred property would not have been included in the decedent's taxable estate, the gift tax on that gift would have been.  Sec. 2035(c) (before redesignation in 1997 as subsec. (b)).

the 1976 changes in Federal law.  Therefore, the court further inferred, the legislature's failure to revise the apportionment statute to reflect the changes in Federal law indicates that they viewed the statute in effect as reaching the same result after 1976.  The court in <u>Shepter</u> provided little or no explanation, however, of how the apportionment statute could be read to require the apportionment of estate tax to the recipient of a lifetime gift.  The court's reference to the mechanics of the computation of the Federal estate tax could indicate that it had in mind an argument similar to the one petitioner makes here:  that the recipient of a lifetime gift is a "person interest in the estate" because the decedent's adjusted taxable gifts were included in the computation of the estate tax liability.  Again, the terms of the Maryland apportionment statute provide less of a textual basis for that argument than does the New Jersey statute.  Although the property received by the donee in <u>Shepter</u> was included in the decedent's adjusted taxable gifts and, in that respect, taken into account in computing the estate tax liability subject to apportionment, that property was not included in the decedent's taxable estate.  Therefore, the donee could not have been a "person interested in the estate" within the meaning of Md. Code Ann., Tax-Gen. sec. 7-308(a)(4).

Events following the Court of Appeals of Maryland's issuance of its <u>Shepter</u> opinion demonstrate the hazard of the court's reliance on legislative inaction.  As

intervenors note, in 1995, the Maryland legislature adopted a law that repealed and reenacted without amendment Md. Code Ann., Tax-Gen. secs. 7-308(a)(1) and (4) and 7-308(b) with the apparent purpose of adding an interpretive gloss on those provisions that overruled Shepter.[18]  Moreover, as previously noted, the first revision of the Uniform Act adopted after 1976 specifically declines to apportion estate tax liability to the recipient of a gift received within three years of the decedent's death because of the inclusion of the gift tax in the decedent's gross estate under section 2035(b).[19]  Professor Kahn explained that the drafters had

_____

[18]1995 Md. Laws 3218, 3219, sec. 2 provides:

[R]eferences to "taxable estate" in § 7-308(a)(4) * * * and to "interest" and "interests" of a decedent in § 7-308(b) * * * do not include any interest of the decedent that is not included in the value of the decedent's taxable estate determined under §§ 2001(b)(1)(A) and 2051 of the Internal Revenue Code of 1986, and specifically do not include any adjusted taxable gifts of the decedent as defined in § 2001(b) of the Internal Revenue Code, notwithstanding any holding or dictum to the contrary in Shepter v. Johns Hopkins University * * * 637 A. 2d 1223 (1994).

1995 Md. Laws 3218, 3219, sec. 3 adds "[t]hat apportionment of a decedent's federal estate tax may not be made under § 7-308 * * * to any adjusted taxable gift of the decedent, as defined in § 2001(b) of the Internal Revenue Code."

[19]The 2003 Uniform Act apportions estate tax among those having an interest in the "apportionable estate".  Unif. Estate Tax Apportionment Act sec. 3-9A-104, 8 (Part II) U.L.A. 384 (2013).  The Uniform Act specifically excludes from the apportionable estate "any amount added to the decedent's gross estate

(continued...)

"two good reasons" for their decision not to apportion estate tax to recipients of gifts giving rise to section 2035(b) inclusions. Douglas A. Kahn, "The 2003 Revised Uniform Estate Tax Apportionment Act", 38 Real Prop. Prob. & Tr. J. 613, 630 (2004). First, allocating estate tax to donees would require "very complex statutory language". Id. Second, "in many cases it would be difficult to collect the tax due from the donees." Id.

The Mississippi apportionment statute interpreted by that State's Supreme Court in Necaise, like Maryland's apportionment statute, was modeled on the Uniform Estate Tax Apportionment Act of 1964. Under the Mississippi statute, a recipient of property from the decedent is subject to apportionment of estate tax if the property received was "included in the decedent's taxable estate." Miss. Code Ann. sec. 27-10-7 (West 2012) (requiring apportionment of tax "among all persons interested in the estate"); id. sec. 27-10-5(d) (defining "person interested in the estate" to mean "any person * * * entitled to receive, or who has received, from a decedent while alive or by reason of the death of a decedent any property or interest therein included in the decedent's taxable estate"). The gifts at issue in Necaise, made in 1989 and 1999, would not have been included in the decedent's

_____

[19](...continued) because of a gift tax on transfers made before death." Id. sec. 3-9A-102(1)(C), 8 (Part II) U.L.A. at 374.

estate (although, because the decedent died in 2000, the gift tax on the later gift would have been included). The Mississippi Supreme Court wrote: "Clearly, Raymond [the donee] meets the definition of 'person interested in the estate' as provided in Miss. Code Ann. § 27-10-5(d). He has received an interest from the decedent's estate while alive. As such, Raymond is a person interested in the estate as defined by Miss. Code Ann. § 27-10-5(d)." Necaise, 915 So. 2d at 451. Under the terms of the apportionment statute, however, the donee did not qualify as a "person interested in the estate" unless the property he received from the decedent during the latter's life had been included in the decedent's taxable estate. The trial court had determined, without apparent legal foundation, that the property the donee had received as a lifetime gift from the decedent had been included in the decedent's taxable estate, and the Mississippi Supreme Court uncritically accepted that determination. Thus, the conclusion reached by both courts that the donee was required to bear a ratable share of the decedent's Federal estate tax appears to have rested on a misunderstanding of Federal estate tax law.

In Bunting, 760 A.2d 989, the Appellate Court of Connecticut addressed the question of whether any of the Federal tax on the estate of a decedent who died in 1994 had to be apportioned to the recipient of a gift the decedent had made in 1988. The court's conclusion that apportionment was required, like that of the

Mississippi courts in <u>Necaise</u>, appears to have been based on a misunderstanding of the treatment of the gift under Federal estate tax law. The Connecticut apportionment statute provided for the apportionment of estate tax "among the persons interested in the estate" who receive "property required to be included in the gross estate of * * * [the] decedent under the provisions of * * * [the relevant tax] law". Conn. Gen. Stat. Ann. sec. 12-401(a) (West 2008). Thus, the statute would have required apportionment to the donee of the 1988 gift only if the transferred property had been included in the decedent's gross estate. The court's recitation of the facts gives no indication that the decedent retained an interest in that property, such as a life estate, that would have required the property to be included in the decedent's gross estate. <u>See</u> sec. 2036(a)(1). Moreover, because the gift was made six years before the decedent's death, not even the gift tax on the gift would have been includible in the gross estate. The court seemed to be under the mistaken impression, however, that <u>all</u> lifetime gifts are included in a decedent's Federal gross estate. In particular, the court appears to have misinterpreted two Code provisions: section 2045, which provides that specified rules that include in a decedent's gross estate property not owned by the decedent at death can apply to inter vivos transfers "whenever made", and section 2012(a), which allows a credit against estate tax for any gift tax paid on gifts included in

the decedent's estate. Section 2045, however, does not provide that any property subject to a donative transfer, "whenever made", is included in the donor's gross estate. Property not owned by the decedent at death is included in his gross estate only in the circumstances described in sections 2034 through 2042, such as when the decedent made an inter vivos transfer of the property subject to a retained life estate. See sec. 2036(a)(1). Section 2045 simply clarifies the scope of the inclusionary rules provided in sections 2034 through 2042. Again, the recitation of the relevant facts by the court in Bunting gives no indication that one of those inclusionary rules applied to the property transferred to the donee. Similarly, section 2012(a) had no bearing on the issue before the court. That section provides a transition rule that implements the 1976 changes to the Federal transfer tax regime and applies only to gifts made before January 1, 1977. See sec. 2012(e). Therefore, the court in Bunting appears to have been mistaken in its assumption that the transferred property had been included in the decedent's Federal gross estate. If that property was not included in the Federal gross estate, the donee should not have been apportioned any of the decedent's estate tax liability under the Connecticut apportionment statute.

As explained above, the opinions of the Court of Appeals of Maryland, the Mississippi Supreme Court, and the Appellate Court of Connecticut in Shepter,

Necaise, and Bunting, respectively, provide little or no support for petitioner's argument that the gifts intervenors received from decedent were part of his "gross tax estate", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(b) because, as adjusted taxable gifts, they were "required to be included in computing" decedent's estate tax liability. The decision of the Court of Appeals of Maryland in Shepter seems to have rested primarily on a questionable inference from legislative inaction that ended up being refuted by the Maryland legislature's overruling of that decision. To the extent that the court in Shepter accepted an argument similar to petitioner's regarding the impact of a decedent's adjusted taxable gifts on estate tax liability, the court's reasoning reflected a misunderstanding of the Federal estate tax law. The Mississippi Supreme Court's opinion in Necaise and that of the Appellate Court of Connecticut in Bunting also appear to have been grounded in misunderstandings of the Federal estate tax law. At best, the three cases petitioner relies on can be viewed as illustrating courts' willingness to require apportionment of estate tax to donees of lifetime gifts, without express statutory authorization, to reach what may be perceived as an equitable result. Whatever the equitable merits of requiring donees to bear that portion of the estate tax attributable to gifts they receive, we are reluctant to base our decision on speculation that New Jersey courts will go beyond the bounds of their State's apportionment statute. As

explained above, without regard to policy considerations, the terms of that statute are best read to allow apportionment of estate tax only to recipients of property included in the decedent's gross estate. As indicated by the choices reflected in the 2003 Uniform Act and the Maryland legislature's overruling of Shepter, there do not appear to be sufficient policy grounds to warrant stretching the terms of the New Jersey apportionment statute beyond the bounds we (and, presumably, the New Jersey courts) would otherwise recognize.

### 2. Petitioner's Second Argument

Our conclusion that the New Jersey apportionment statute provides for apportionment of estate tax only to recipients of property included in the decedent's gross estate does not dispose of petitioner's second argument. That argument, in contrast to his first argument, rests on the unique circumstances of a "net" gift. In particular, petitioner argues that a portion of the property intervenors received "represent[ed] the gift tax that was added back to * * * [decedent's] estate". Therefore, he claims, intervenors "clearly received a portion of 'the gross tax estate [i.e., at least the portion of the gift that enabled them to pay the gift tax].'"

Petitioner's second argument would have us equate a portion of the property intervenors received with the gift tax paid on the taxable gift. In fact, however, no

portion of the units decedent transferred to intervenors was included, as such, in his gross estate. The relevant rules that define a decedent's gross estate generally provide that it includes the value of specified items of property. For example, section 2031(a) provides: "The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property". Section 2033 provides: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." By contrast, section 2035(b) does not speak in terms of values and property. It speaks instead of amounts: "The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid * * * on any gift made by the decedent * * * during the 3-year period ending on the date of the decedent's death." If section 2035(b) does not include in decedent's gross estate, in whole or in part, the units intervenors received in 2002, then those units were not part of decedent's "gross tax estate", as defined by N.J. Stat. Ann. sec. 3B:24-1(b). And if those units were not part of the decedent's gross tax estate, then intervenors were not "transferees", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d), because they were not persons "to whom the gross tax estate, or any part thereof" was "transferred". Finally, if

intervenors were not "transferees", no part of decedent's estate tax liability could be apportioned to them under N.J. Stat. Ann. sec. 3B:24-4.

Respondent's reasoning suffers from a similar flaw: failing to come to terms with the terms of the New Jersey apportionment statute under which intervenors could be "transferees" subject to apportionment of estate tax only if nonprobate property included in decedent's gross estate were transferred to them or if a "benefit" in any such property otherwise accrued to them. Respondent fails to identify any property included in decedent's gross estate that intervenors received or from which they otherwise benefited. The only property intervenors received from decedent were units. Although the amount of gift tax paid on decedent's 2002 gifts of units was included in his gross estate, the units themselves were not.

The opinion of the Westchester County (New York) Surrogate's Court in In re Application of Rhodes, 868 N.Y.S.2d 513 (Surr. Ct. 2008), on which both petitioner and respondent rely, also erroneously equates gift tax and property. Rhodes involved a decedent who, less than two years before his death in 2007, "sold" property to his son and daughter-in-law for an amount equal to the expected gift tax on the transfer. Because the decedent died less than three years after the gift, the gift tax paid on the gift was included in his gross estate under section 2035(b). The court granted the executors' request to apportion to the donees the

estate tax liability attributable to the section 2035(b) inclusion. In distinguishing Coven and Metzler (discussed above), the court wrote: "Unlike adjusted taxable gifts which are added to the tax calculation in a separate step after the gross estate has been determined * * * the gift taxes paid are a component of the gross estate as defined by IRC 2035 (and thus for the application of EPTL 2-1.8 * * *) and as such are subject to apportionment." Id. at 518. Under the terms of the New York apportionment statute, however, an increase in the amount of the decedent's gross estate by the gift tax does not require that the donees be allocated a portion of the estate tax liability. The donees were subject to apportionment only if property included in the gross tax estate had been "disposed of" to them (or if any "benefit" in the property had accrued to them).[20] The donees did not receive the gift taxes that resulted in the section 2035(b) inclusion, nor did any benefit in the property used to pay the gift tax accrue to them.

---

[20]The New York apportionment statute provides:

> Whenever it appears * * * that a fiduciary has paid or may be required to pay an estate or other death tax * * * with respect to any property required to be included in the gross tax estate of a decedent * * * the amount of the tax * * * [in the absence of any contrary direction] shall be equitably apportioned among the persons interested in the gross tax estate * * * to whom such property is disposed of or to whom any benefit therein accrues * * *.

N.Y. Est. Powers & Trusts Law sec. 2-1.8 (McKinney 2012).

In sum, because the units intervenors received were not included in decedent's gross estate, and thus were not "included in computing" decedent's Federal estate tax liability, within the meaning of N.J. Stat. Ann. sec. 3B:24-1(b), intervenors were not "transferees", within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d) to whom any of that liability can be apportioned under N.J. Stat. Ann. sec. 3B:24-4(a). Because we conclude that the New Jersey apportionment statute does not provide for apportionment of any of decedent's Federal estate tax liability to intervenors, we need not consider intervenors' alternative argument that the gift and acceptance agreement that decedent entered into with each of them in 2002 was a "nontestamentary instrument", within the meaning of N.J. Stat. Ann. sec. 3B:24-2, that precluded any apportionment of estate tax to intervenors that the statute might otherwise require.

### 3. Effect of Estate Tax on Marital Deduction

Petitioner also asks for partial summary judgment that "any federal estate tax owed in connection with this proceeding * * * cannot be charged against the federal estate tax marital deduction". He argues, citing <u>Dodd v. United States</u>, 345 F.2d 715 (3d Cir. 1965), that "New Jersey law does not permit apportionment of the tax to a surviving spouse's share of an estate, and so under no circumstances may the marital deduction be reduced for any estate tax."

Petitioner's reliance on <u>Dodd</u> is misplaced. That case addressed the apportionment of tax owed by the estate of a decedent who executed his will before January 1, 1951--the effective date of the New Jersey apportionment statute. Therefore, the Court of Appeals applied New Jersey common law. The court declined to employ the traditional common law presumption that would have required the residuary of the decedent's estate to bear the burden of the estate tax. Because the decedent executed his will one month after the Federal marital deduction became law, the court reasoned that the decedent's most likely intention was to allow his wife to enjoy the full benefit of that deduction. Therefore, the court concluded that "the wife's share of the residue is not required to bear any share of the estate tax." <u>Id.</u> at 720.

Although the New Jersey apportionment statute superseded the common law rule announced in <u>Dodd</u>, the statute reflects the principle the court applied in that case. As noted above, N.J. Stat. Ann. sec. 3B:24-4(b) provides as a general rule that any deduction allowed in regard to property transferred to a decedent's spouse "shall inure to" the spouse's benefit. Thus, the statute generally precludes the apportionment of Federal estate tax to a surviving spouse as a result of the spouse's receipt of or succession to property covered by the marital deduction.

N.J. Stat. Ann. sec. 3B:24-4(b) does not provide absolute protection to a surviving spouse against bearing the economic burden of a tax imposed on the decedent's estate. The statute provides only that the spouse should realize the benefit of any deduction allowed in computing the estate tax as a result of his or her relationship to the decedent. If the spouse receives nonprobate property not covered by the marital deduction (as might be the case, for example, if the spouse voluntarily uses that property to pay the decedent's debts or expenses of his estate), the spouse might well be a "transferee" within the meaning of N.J. Stat. Ann. sec. 3B:24-1(d) subject to apportionment of a share of the estate tax. Moreover, if the surviving spouse, as in the present case, is a residuary beneficiary of the decedent's estate, the spouse could bear the economic burden of any Federal estate tax apportioned to the fiduciary under N.J. Stat. Ann. sec. 3B:24-4(a). N.J. Stat. Ann. sec. 3B:24-4(b) would not insulate the spouse from the burden of the tax in such a case because, to the extent that property that would otherwise have been distributed to the spouse must be used to pay the tax, it would not be covered by the marital deduction allowed by section 2056(a). See Bartel v. Clarenbach, 274 A.2d 841, 843-844 (N.J. Super. Ct. Ch. Div. 1971) (reasoning that the predecessor of N.J. Stat. Ann. sec. 3B:24-4(b) "should not be interpreted to mean that in every case, and absent any instructions to the contrary, the mere fact that a

spouse's share of the residuary estate qualifies for the marital deduction automatically excludes it from paying its proportionate share of the federal estate tax imposed on the residuary estate."); In re Estate of Green, 185 A.2d 57, 63-64 (N.J. Cty. Ct. 1962) ("When the gift to the spouse is of the residue, she takes only what is left after payment of proper charges including taxes chargeable against the residue.").

On the record before us, we are unable to determine the extent to which the estate tax will reduce the value of the marital share of decedent's estate. As noted above, to the extent that Bernice used property that would otherwise have been exempt from claims against the estate to pay debts or expenses, she may have been a "transferee" subject to apportionment of estate tax. If neither Bernice nor intervenors are transferees subject to apportionment under the New Jersey statute, the Federal estate tax liability would be apportioned entirely to the fiduciary under N.J. Stat. Ann. sec. 3B:24-4(a). To the extent that any tax apportioned to the fiduciary reduces the residuary distributions ultimately made to Bernice's successors, the tax will be paid out of the marital share of the estate. Petitioner's claim to a marital deduction that includes only the value of nonprobate property, however, may indicate that, even without regard to the estate tax deficiency, decedent's probate estate would have been entirely consumed by debts and

expenses.  To the extent that petitioner pays estate tax out of assets that would otherwise have been used to pays debts or expenses, the tax would not reduce the value of the property ultimately received by Bernice and her successors.  (To that extent, the burden of the estate tax would be borne by the estate's creditors.)  Moreover, the allocation to petitioner under N.J. Stat. Ann. sec. 3B:24-4(a) of an amount of estate tax in excess of the value of the assets remaining under his control may have no economic consequence.  Instead, the ultimate incidence of that portion of tax might depend on the vagaries of the Service's exercise of discretion in choosing among alternative sources for the tax's collection.  Whoever pays that portion of the estate tax would presumably have a right to reimbursement from a fiduciary with no assets remaining under his control from which to make the required reimbursement.  We need not address those potential conundrums at this juncture.  At this stage of the proceedings, and on the limited record before us, we conclude only that N.J. Stat. Ann. sec. 3B:24-4(b), which requires that Federal estate tax be apportioned in a manner that preserves for the benefit of a decedent's spouse, to the extent possible, the benefit of any marital deduction allowed by section 2056(a), provides us insufficient grounds to rule as a matter of law that any estate tax due in this case cannot affect the allowable marital deduction.

E.    <u>Conclusion</u>

For the reasons explained above, we will deny petitioner's motion for partial summary judgment that any Federal estate tax owed by decedent's estate must be apportioned to intervenors and cannot reduce the marital deduction to which the estate is entitled under section 2056(a).  For the same reasons, we will grant intervenors' motion for partial summary judgment that none of the estate tax can be apportioned to them under applicable New Jersey law.

<u>An appropriate order will be issued</u>.